T.C. Memo. 1996-300

UNITED STATES TAX COURT

THEODORE W. KELLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1284-95.                              Filed June 27, 1996.

Theodore W. Keller, pro se.

Jeremy L. McPherson, for respondent.

MEMORANDUM OPINION

COUVILLION, Special Trial Judge:  This case was heard
pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

Respondent determined a deficiency of $2,996 in petitioner's
Federal income tax and an accuracy-related penalty under section

---

[1]    When the petition was filed, petitioner elected to have this
case considered pursuant to sec. 7463(a) as a small tax case.
Prior to trial, petitioner requested that the case be considered
pursuant to sec. 7443A(b)(3).  The Court granted petitioner's
request.  Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the year at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

6662(a) in the amount of $599 with respect to petitioner's 1991 tax year.

The issues for decision are: (1) Whether certain educational expenses incurred by petitioner constitute nondeductible travel expenses for education under section 274(m)(2), and (2) whether petitioner is liable for the accuracy-related penalty under section 6662(a).

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was in the State of California.

During the year at issue, petitioner was employed as a professor of international relations by San Francisco State University at San Francisco, California (the University). The department of international relations at the University is part of the School of Behavioral and Social Sciences. Petitioner began his employment with the University in the fall of 1964, having a bachelor of arts degree in psychology and master and doctorate degrees in political science. After the year at issue, petitioner retired in October 1992 as professor emeritus.

As petitioner described it at trial, the academic field of international relations mainly involves international politics and encompasses social, economic, political, and cultural relations among nations. As a professor of international

relations, petitioner was interested in and focused on the theory of international politics, such as what makes nations do what they do, why nations take such positions, and theories of revolution, counterrevolution, and war. Approximately every 7 years, professors at the University in this field of academics were expected, although not required, to travel to a foreign country to learn more about their field of study. Petitioner took two such trips, both to France, during the 1976-77 and the 1983-84 academic years. The third trip he took, to Spain, during the 1990-91 academic year, gives rise to this litigation.

Sometime during 1990, petitioner applied with the University for a "Difference In Pay" leave for the 1990-91 academic year, which was approved. At trial, the parties referred to the leave as a sabbatical leave. During this leave period, petitioner was paid one-half his regular salary. Between August 1990 and until July 25, 1991, petitioner was in Madrid, Spain, except for 2 weeks at Christmas during 1990 and 4 days in the spring of 1991.

In his application for the sabbatical, petitioner was required to briefly describe what activity he proposed to engage in during his leave. Petitioner stated on his application that he would focus on the "post-industrial era" and "write a book-length * * * essay on this subject, exploring how and why post-industrial society's socio-economic political consciousness will differ from our own". He stated further in his application that

approximately half of his research for the proposed manuscript was already completed, and he continued:

> Partly for economic reasons, partly to get a change of pace, I intend to go abroad to do the writing. My last sabbatical was spent in Paris and I managed to take an hour a day of conversational French as well as write MARX'S TRUTH AND ITS CONSEQUENCES. I am considering going to Spain this time and attempting to learn a bit of Spanish.

The manuscript referred to was initially begun by petitioner on one of his earlier sabbaticals in France. For the planned sabbatical, petitioner testified at trial "my intention was to go to Spain and to talk to other people in Spain from elsewhere in Europe about that subject". After arriving in Spain in August 1990, petitioner resumed work on the manuscript and completed a draft that he sent to another professor at the University, who at one time was chairman of the international relations department, Dr. Henry E. McGuckin, Jr. Dr. McGuckin reviewed the draft manuscript and advised petitioner: "It has a lot of great arguments, but it's much too theoretical. I think you'll turn a lot of people off with this." Apparently heeding Dr. McGuckin's advice, petitioner did no further work on the manuscript and decided to focus his attention on something else. At that time, the military involvement of the United States in the area of the Persian Gulf was just beginning, occasioned by the invasion of Kuwait by Iraq. Petitioner decided that he would redirect his efforts to a study of the Persian Gulf situation primarily from

the European perspective as viewed from Spain.  As petitioner envisioned the situation, the European perspective was that the United States had "set up" Iraq through its leader, Saddam Hussein, to attack Kuwait, after which the United States would thereby be justified in proceeding with military action, which would result in the United States solidifying control of the Persian Gulf and the attendant oil resources of that area of the world.  The remainder of petitioner's sabbatical leave, therefore, was devoted to this subject and resulted in petitioner's writing a five-act play dealing with the Persian Gulf situation.  Petitioner returned to the United States on July 25, 1991, and resumed his professorship at the University upon conclusion of his sabbatical leave.  The five-act play, which he wrote while in Spain, was published and was utilized by petitioner in his international relations courses at the University.

On his Federal income tax return for 1991, petitioner claimed on Schedule A, Itemized Deductions, a deduction of $13,505 for job expenses and other miscellaneous deductions. This amount included the following expenses attributable to petitioner's travel to Spain during 1991, related to his sabbatical leave:

```
$   202  Vehicle expenses
     48  Parking fees
  7,610  Sabbatical expenses:
              $  791  Air, bus, etc.
                 593  Shipping, passports
                 254  Local transportation
               4,486  Lodging
               1,318  Utilities
                 168  Utilities
  2,874  Meals (80 percent of actual amount)
$10,734  Total (prior to deduction of 2 percent of adjusted
                 gross income under sec. 67(a))
```

In the notice of deficiency, respondent disallowed the
$10,734 on the ground that "no deduction is allowed for costs of
travel that constitutes a form of education".  At trial,
respondent agreed that petitioner had incurred the amounts
claimed but contended that such expenses were not allowable
deductions under section 274(m)(2).

Deductions are strictly a matter of legislative grace, and
the taxpayer bears the burden of proving entitlement to any
deductions claimed.  Rule 142(a); New Colonial Ice Co. v.
Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S.
111 (1933).

Section 162(a) permits a deduction for all ordinary and
necessary expenses paid or incurred during the taxable year in
carrying on a trade or business.  Such expenses generally include
expenditures for travel while away from home in the pursuit of a
trade or business.  The word "travel" includes meals and lodging.
Sec. 162(a)(2).

Prior to 1987, section 1.162-5(d), Income Tax Regs., specifically provided that an individual traveling away from home primarily for educational purposes could properly deduct expenditures for travel, including meals, and lodging under section 162. However, in the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2118, section 142(b) of that act expressly overruled section 1.162-5(d), Income Tax Regs. In particular, section 142(b) of the Tax Reform Act of 1986 added section 274(m)(2) and provides that "No deduction shall be allowed under this chapter for expenses for travel as a form of education." Section 274(m)(2) is effective for tax years after 1986.

No regulations have been promulgated with respect to section 274(m)(2). However, the legislative history of this provision gives significant insight as to the intent of Congress in enacting section 274(m)(2). In H. Conf. Rept. 99-841, (Vol. 2) at II-30 (1986), 1986-3 C.B. (Vol. 4) 1, 30, the explanation for this legislation is as follows:

> Educational travel.--No deduction is allowed for costs of travel that would be deductible only on the ground that the travel itself constitutes a form of education (e.g., where a teacher of French travels to France to maintain general familiarity with the French language and culture, or where a social studies teacher travels to another State to learn about or photograph its people, customs, geography, etc.). This provision overrules Treas. Reg. sec. 1.162-5(d) to the extent that such regulation allows deductions for travel as a form of education.

In H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1, 122, the Committee on Ways and Means of the House of Representatives reported:

Travel as a form of education

The committee is concerned about deductions claimed for travel as a form of "education." The committee believes that any business purpose served by traveling for general educational purposes, in the absence of a specific need such as engaging in research which can only be performed at a particular facility, is at most indirect and insubstantial. By contrast, travel as a form of education may provide substantial personal benefits by permitting some individuals in particular professions to deduct the cost of a vacation, while most individuals must pay for vacation trips out of after-tax dollars, no matter how educationally stimulating the travel may be. Accordingly, the committee bill disallows deductions for travel that can be claimed only on the ground that the travel itself is "educational", but permits deductions for travel that is a necessary adjunct to engaging in an activity that gives rise to a business deduction relating to education.

Petitioner argues that the work he performed in Spain could not have been performed in the United States and necessarily required foreign travel because the European perspective of the Persian Gulf war was not made known or publicized by the news media in the United States. That argument, however, is misdirected because petitioner did not apply for a sabbatical leave in order to make a study of the Persian Gulf war. Petitioner's intent and purpose in taking the sabbatical and in traveling to Spain was to complete a manuscript on an unrelated subject he had begun several years before. The University did

not require that petitioner travel to Europe or anywhere else as a condition of the sabbatical. It was only as an afterthought, after petitioner arrived in Spain, that he changed his mind from completion of the manuscript on an unrelated subject to a study of the Persian Gulf war from the European point of view. Under either situation, whether petitioner desired to complete a manuscript, or to study the European view of the Persian Gulf war, the travel involved would appear to lie within the examples of travel described in the legislative history of section 274(m)(2) quoted above of the teacher of French, who travels to France to maintain general familiarity with the French language and culture, or the social studies teacher who travels to another State to learn about or photograph its people, customs, geography, etc. Here, petitioner's express purpose, after arriving in Spain, was to learn the European perspective of the Persian Gulf war. Petitioner's situation falls squarely within the type of travel Congress intended in enacting section 274(m)(2) in disallowing expenses relating to travel as a form of education. On this record, petitioner has not established that the deductions claimed were a necessary adjunct to engagement in an activity giving rise to a business deduction relating to education that Congress intended to remain as an allowable deduction. Respondent, therefore, is sustained on this issue.

The remaining issue is whether petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence under section 6662(c). Generally, this penalty is applicable to any underpayment of tax attributable to negligence or disregard of rules or regulations. Section 6662(c) provides that the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of this title, and the term "disregard" includes any careless, reckless, or intentional disregard. Negligence has also been defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under like circumstances. Neely v. Commissioner, 85 T.C. 934 (1985). However, under section 6664(c), the penalty under section 6662(a) shall not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for the underpayment, and the taxpayer acted in good faith. Petitioner is sustained on this issue. The Court is satisfied that petitioner acted in good faith in claiming the disputed travel expenses for 1991. There were no regulations that had been promulgated to reflect the intent of Congress in the enactment of section 274(m)(2) and to particularize those travel expenses relating to education that were not affected by section 274(m)(2). For the year in question, therefore, there was no clear-cut guide by which taxpayers, such as petitioner, could have ascertained whether the travel expenses incurred were

nondeductible education travel expenses or otherwise were allowable education expenses.

Decision will be entered for respondent for the deficiency in tax and for petitioner as to the section 6662(a) accuracy-related penalty.