T.C. Memo. 2006-79


UNITED STATES TAX COURT


ALVIN S. KANOFSKY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12547-04.                    Filed April 18, 2006.


        P, a full-time professor of physics at Lehigh
University, filed 1996-2000 individual income tax
returns in which he reported, on Schedule C, Profit or
Loss From Business, zero gross receipts and substantial
deductions from alleged business activities.  R denied
the 1996-98 Schedule C deductions on the ground that P
was not engaged in any trade or business, and he denied
a portion of the 1999 and 2000 Schedule C deductions on
the ground that the disallowed expenses were unrelated
to P's business activities.  For all of the audit
years, however, R allowed some of P's expenses as
deductions on Schedule A, Itemized Deductions.  For
1997, R also determined that P is subject to the sec.
6662, I.R.C., accuracy-related penalty.

        1.  Held:  R's denial of business expense
deductions under sec. 162(a), I.R.C., sustained.

2.  Held, further, modifications to the deficiency determinations for 1997-99 required in order to correct computational errors.

3.  Held, further, R's penalty against P for 1997 sustained, in part, under sec. 6662, I.R.C.


Alvin S. Kanofsky, pro se.

Frank J. Jackson, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  By notice of deficiency dated April 19, 2004 (the notice), respondent determined deficiencies in petitioner's Federal income tax and an accuracy-related penalty as follows:

| Tax Year Ending Dec. 31 | Deficiency | Penalty Sec. 6662(a) |
|---|---|---|
| 1996 | $14,506 | --- |
| 1997 | 15,437 | $3,087.40 |
| 1998 | 10,078 | --- |
| 1999 | 716 | --- |
| 2000 | 2,970 | --- |

By the petition, petitioner assigns error to respondent's deficiency determinations for all years and his penalty determination for 1997.  After concessions,[1] the issues for decision are whether petitioner is (1) entitled to deductions he

---

[1]  Petitioner concedes respondent's inclusion in income of (1) $70 of unreported interest for both 1999 and 2000, and (2) an unreported State tax refund of $30 for 1999.

claimed on the Schedules C, Profit or Loss From Business, for each of the years at issue greater than those deductions allowed by respondent on either Schedule C or Schedule A, Itemized Deductions, and (2) liable for the section 6662(a) accuracy-related penalty for 1997.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some facts are stipulated and are so found. The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.

At the time the petition was filed, petitioner resided in Bethlehem, Pennsylvania.

Background

During the years at issue, petitioner was employed as a full-time professor of physics at Lehigh University. Petitioner earned a B.A. and an M.S. in physics and a Ph.D. in experimental particle and nuclear physics from the University of Pennsylvania. During the years at issue, petitioner owned property at 30 East 3d Street in Bethlehem, Pennsylvania (the Bethlehem property), an apartment in Mt. Pocono, Pennsylvania, and an apartment in North

Shirley, Long Island.  Petitioner did not lease any of those properties to tenants during 1996-98.

Petitioner's Returns

For each year in issue, petitioner filed a Form 1040, U.S. Individual Income Tax Return, showing zero taxable income and no tax due.  On a Schedule C attached to each of those returns, petitioner listed as his principal business or profession "research and development" and as the name of his business "A.S.K. Enterprises".  Only the 1999 and 2000 Schedules C listed a business address, which was 30 E. 3d St., Bethlehem, PA 18015 (the Bethlehem property).  All of the Schedules C report zero gross receipts and zero gross income, and they report the following amounts of total expenses (and resulting losses):

| Year | Schedule C Expenses |
|------|---------------------|
| 1996 | $72,786 |
| 1997 | 75,388 |
| 1998 | 80,675 |
| 1999 | 85,845 |
| 2000 | 80,020 |

The Notice

The notice disallows all of petitioner's 1996-98 reported Schedule C expenses and a portion ($33,945 for 1999 and $40,113 for 2000) of those expenses for 1999 and 2000.  Those disallowances are based upon respondent's determination that petitioner failed to establish that he "incurred or, if incurred,

paid these amounts during the taxable years for ordinary and necessary business purposes".

The disallowance of petitioner's claimed Schedule C deductions for 1996-98 is based upon respondent's view that petitioner was not engaged in a trade or business during those years. For each of those years, however, respondent allows some of the disallowed Schedule C deductions (e.g., insurance, taxes, mortgage interest) as Schedule A deductions with respect to investment properties. For 1996 and 1997, respondent also allows Schedule A deductions for employee business expenses.

By his treatment of petitioner's Schedule C expenses for 1999 and 2000, respondent, in effect, concedes that, during those years, petitioner was carrying on a trade or business at the Bethlehem property, but not at his other two properties, which respondent continues to treat as investment properties. For 1999 and 2000, respondent allows Schedule C deductions for expenses associated with the Bethlehem property, but converts the portion of petitioner's Schedule C deductions for taxes and interest associated with the other two properties into Schedule A deductions.

The total additional Schedule A deductions allowed each year are as follows:

| Year | Additional Schedule A Deductions |
|------|----------------------------------|
| 1996 | $46,632 |
| 1997 | 20,933 |
| 1998 | 42,881 |
| 1999 | 23,235 |
| 2000 | 22,414 |

OPINION

## I. Burden of Proof

Generally, a taxpayer in this Court bears the burden of proof. Rule 142(a)(1). In certain circumstances, however, if the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the proper tax liability, section 7491 shifts the burden of proof to the Commissioner. Sec. 7491(a)(1); Rule 142(a)(2). Credible evidence is evidence the Court would find sufficient upon which to base a decision on the issue in favor of the taxpayer if no contrary evidence were submitted. See Higbee v. Commissioner, 116 T.C. 438, 442 (2001); Bernardo v. Commissioner, T.C. Memo. 2004-199 n.6. Section 7491(a)(2) imposes certain prerequisites to the application of section 7491(a)(1), including that the taxpayer has complied with the requirements under the Internal Revenue Code "to substantiate any item". Sec. 7491(a)(2)(A).

As discussed infra, petitioner has failed to introduce credible evidence of his entitlement, under section 162, to the disallowed Schedule C deductions. Therefore, petitioner bears the burden of proof with respect to his entitlement to those deductions pursuant to Rule 142(a), a burden that, because of the

absence of credible evidence of deductibility, petitioner cannot sustain.  See Bernardo v. Commissioner, supra n.7.

Under section 7491(c), respondent retains the burden of production (but not the overall burden of proof) with respect to petitioner's liability for the accuracy-related penalty under section 6662(a).  See Higbee v. Commissioner, supra at 446-447.

## II.  Petitioner's Schedule C Deductions

### A.  The Parties' Arguments

On brief, respondent summarizes his position as follows:

> Specifically, petitioner failed to offer any evidence, other than his uncorroborated testimony, that he was engaged in a trade or business in taxable years 1996, 1997 and 1998[,] and [he] failed to produce adequate records which substantiate the disallowed Schedule C expenses in taxable years 1996-2000 * * *.

Petitioner testified at trial and reiterates on brief that he has been engaged in various business activities for the past 25 years, and that, as petitioner puts it on brief, during the 1996-2000 period, he was actively "developing ideas for companies, creating companies, and expanding on earlier research projects and ideas, developing patents, and protecting the company interests with law suits [sic], etc. as well as using his building for business purposes and improving the building."

### B.  Deductibility of Expenses Under Section 162(a)

Section 162(a) permits a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Any amount claimed as a

business expense must be substantiated, and the taxpayer is required to maintain records sufficient to establish that he or she is entitled to the claimed deduction. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. In some circumstances, if a taxpayer establishes that he or she incurred a deductible expense but cannot substantiate it in full, the Court may approximate the amount of an allowable deduction. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930) (the Cohan rule). The approximation, however, must have some evidentiary basis. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). With respect to certain business and other expenses specified in section 274(d), more stringent substantiation requirements apply. Those requirements supersede the application of the Cohan rule. See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

C. Discussion

1. 1996-98

During the trial, petitioner tried to place in evidence a number of documents in support of his argument that he incurred deductible business expenses during the years at issue. Most of those documents were not admitted into evidence, either because they constituted inadmissable hearsay, or because their admission into evidence would have violated the Court's standing pretrial order dated October 8, 2004, and, in particular, the so-called

14-day rule contained in that order, which states that, in the absence of good cause shown, the Court may exclude from evidence any documents not "exchanged by the parties at least 14 days before the first day of the trial session."

The documents petitioner offered during the trial that were accepted into evidence indicate that petitioner did, in fact, make certain expenditures during the years at issue.[2]  But there is no indication that those documents (copies of canceled checks, bank statements, receipts, correspondence, petitioner's handwritten notes, and other documentation) reflect expenditures that relate to any trade or business petitioner conducted during the 1996-98 taxable years.

Nor does petitioner's trial testimony support his position. Other than stating that he has "engaged in business activity for the past 25 years" and has been "consulting and developing companies over many years", and that he "started back in 1980 with a company, ASK Enterprises and * * * tried to develop the company over the years", his testimony generally describes the manner in which he was thwarted by third parties from pursuing any business activities.

Neither petitioner's exhibits nor his testimony is sufficient to establish that he was engaged in a trade or business during the 1996-98 period.  Moreover, petitioner's 1996-

---

[2]  Respondent allowed some of those substantiated expenditures as Schedule A deductions.

98 Schedules C reporting zero gross receipts from A.S.K. Enterprises support a finding that he was not engaged in any trade or business during that period.

Assuming arguendo that petitioner made efforts to engage in a trade or business during the 1996-98 period and he held (and incurred expenses with respect to) his investment properties (and, in particular, the Bethlehem property) in connection with those efforts, such activities do not amount to "carrying on any trade or business" within the meaning of section 162(a).  See Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other issues 382 U.S. 68 (1965):

> The uniform teaching of these several cases is that, even though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized.  [Fn. ref. omitted.]

Accord Hardy v. Commissioner, 93 T.C. 684, 687 (1989); Goodwin v. Commissioner, 75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982); Madison Gas & Elec. Co. v. Commissioner, 72 T.C. 521, 566-567 (1979), affd. 633 F.2d 512 (7th Cir. 1980).

On brief, petitioner attempts to flesh out his trial testimony by describing in great detail his efforts, beginning in

1980, at establishing various businesses.  In support of those representations petitioner attached appendices to his briefs, which contained many of the exhibits excluded at trial as well as additional material not presented at trial.  Neither statements in briefs nor attachments to briefs constitute admissible evidence, and neither may be considered by the Court.  See Rule 143(b); Bialo v. Commissioner, 88 T.C. 1132, 1140 (1987); Kwong v. Commissioner, 65 T.C. 959, 967 n.11 (1976); Perkins v. Commissioner, 40 T.C. 330, 340 (1963).[3]

### 2.  1999 and 2000

Petitioner's evidence of business use for his three properties is no more convincing for 1999 and 2000 than it is for 1996-98.  Nevertheless, as we said supra, respondent, in effect, concedes that petitioner used the Bethlehem property (but not his other two properties) in carrying on a trade or business during 1999 and 2000.

On petitioner's Schedules C for both 1999 and 2000, he claims 11 expense items.  For 1999, respondent challenges portions of six of those items, and, for 2000, he challenges portions of five.  Two of those disallowed expenses (interest and taxes, presumably associated with his other two properties) are allowed as Schedule A deductions.  Petitioner has failed to

---

[3]  Consistent with that principle, the appendices were detached from petitioner's brief and reply brief and returned to petitioner pursuant to an order of this Court dated July 7, 2005.

produce evidence that the amounts allowed as either Schedule A or Schedule C deductions were insufficient or that respondent's division of those deductions between Schedules A and C was improper.[4]

D. Conclusion

Petitioner has failed to introduce credible evidence (and, therefore, failed to carry his burden of proving) that he is entitled to deductions for the years at issue greater than those allowed by respondent.

III. Respondent's Computational Errors

A. 1997

The parties have stipulated that one of the disallowed Schedule C deductions that is allowed as a Schedule A deduction is $19,119 of mortgage interest. Respondent's allowance of that amount as a Schedule A deduction is also reflected in the examining agent's Form 886-A, Explanation of Items, for 1997 (the 1997 Explanation of Items). The computation of 1997 Schedule A deductions contained in the notice, under the heading "per exam", allows no interest expense deduction. As a result, the total allowable itemized deductions for 1997 (before reduction for the overall limitation on itemized deductions under section 68) is

_____

[4] For 1999 and 2000, it is immaterial whether deductions are allowed on Schedules A or C because petitioner's Schedule A deductions for those years are not subject to reduction pursuant to either sec. 67 (2-percent floor on miscellaneous itemized deductions) or sec. 68 (overall limitation on itemized deductions), nor do they generate alternative minimum tax.

$24,796 rather than $43,915, which would be the amount if the $19,119 deduction for mortgage interest were included as a 1997 Schedule A deduction. In light of the 1997 Explanation of Items, we view respondent's stipulation that he "allowed on Schedule A * * * interest in the amount of $19,119" as an admission that the notice inadvertently and improperly failed to include that amount in its computation of petitioner's Schedule A deductions for 1997. That error necessarily results in an overstatement of petitioner's deficiency determination for 1997.[5]

B. <u>1998 and 1999</u>

Respondent made two minor computational errors for 1998 and 1999.

Petitioner's 1998 Schedule C lists total deductions of $80,675. Both the notice and the agent's Form 886-A for 1998 disallow the deduction of $80,765 of Schedule C expenses. On account of that inadvertent transposition of numbers, the deduction disallowance is $90 greater than the actual deduction.

In the notice, the computation of each year's adjustment for increased Schedule A deductions properly reduces Schedule A deductions "per exam" by petitioner's Schedule A deductions "per

---

[5] Although the agent's 1996-98 Forms 886-A, Explanation of Items (the only three in evidence), permit Schedule A mortgage interest expense deductions with respect to petitioner's three investment properties, the notice's computation of Schedule A deductions for 1998-2000 lists the additional interest expense as "Home Interest Expense." That mischaracterization, however, has no impact on the deductible amounts.

return".  For 1999, however, the notice computation mistakenly fails to offset the Schedule A deductions "per exam", which include a $250 charitable contribution that had been reported on petitioner's 1999 Schedule A as filed, by the amount of that deduction.[6]  Thus, the 1999 adjustment for increased Schedule A deductions should be $22,985, not $23,235 as stated in the notice.

C.  <u>Conclusion</u>

The correction of the foregoing computational errors will be reflected in the Rule 155 computation in this case.

IV.  <u>Accuracy-Related Penalty for 1997</u>

A.  <u>Applicable Law</u>

Section 6662 provides for an accuracy-related penalty (the penalty) in the amount of 20 percent of the portion of any underpayment attributable to, among other things, negligence or intentional disregard of rules or regulations (without distinction, negligence), any substantial understatement of income tax, or any substantial valuation misstatement.  See sec. 6662(b)(1)-(3).  Respondent determined the penalty against petitioner for 1997.  Although the notice states that respondent bases his imposition of the penalty upon "one or more" of the three above-referenced grounds (and although the 1997

---

[6]  The amount shown as "per return" "total itemized deductions" does not include the amount shown for "contributions", $250.

underpayment respondent determined appears, on its face, to be a "substantial understatement" within the meaning of section 6662(d)(1)), the only issue respondent raised on brief is whether petitioner's 1997 underpayment is attributable to "negligence or disregard of rules or regulations."[7]

Section 6662(c) defines the term "negligence", for purposes of section 6662, as including "any failure to make a reasonable attempt to comply with the provisions of this title", and the term "disregard" as including "any careless, reckless, or intentional disregard." Negligence has been generally defined as lack of due care or failure to do what a reasonably prudent person would do under like circumstances. See, e.g., Hofstetter v. Commissioner, 98 T.C. 695, 704 (1992). It "also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs.

Section 6664(c)(1) provides that the accuracy-related penalty shall not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for that portion and the taxpayer acted in good faith with respect to that portion.

---

[7] Therefore, we consider respondent to have abandoned the substantial understatement argument. See Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954), affd. 230 F.2d 603 (2d Cir. 1956); Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954); Roberts v. Commissioner, T.C. Memo. 1996-225.

> The determination of whether a taxpayer acted with
> reasonable cause and in good faith is made on a case-
> by-case basis, taking into account all pertinent facts
> and circumstances.  * * *  Circumstances that may
> indicate reasonable cause and good faith include an
> honest misunderstanding of * * * law that is reasonable
> in light of all of the facts and circumstances,
> including the experience, knowledge, and education of
> the taxpayer.  * * *

Sec. 1.6664-4(b)(1), Income Tax Regs.

B.  Analysis and Conclusion

On brief, respondent alleges that petitioner's failure "to maintain and produce adequate records of his alleged business activities" shows both negligence and intentional disregard of the section 6001 requirement to keep permanent records to establish his gross income and deductions.  Respondent also argues that "petitioner has not offered any evidence * * * that he acted reasonably and in good faith in filing his 1997 tax return."  Petitioner disagrees.

From his testimony, we infer that, both before and during the years at issue, petitioner was seeking to use one or more of his three investment properties in the conduct of a trade or business.  Respondent does not challenge that testimony, and we have no reason to disbelieve it.[8]  Petitioner's error was to treat the expenses associated with his attempts to establish a business operation at one or more of his properties (essentially

---

[8]  Petitioner's testimony is consistent with the examining agent's determination to treat certain of petitioner's Schedule C expenses for 1997 as either deductible (on Schedule A) or capitalizable expenses associated with "rental property".

pre-startup expenses since they have not been shown to relate to the future commencement of any specific trade or business) as section 162(a) ordinary and necessary business expenses, deductible on Schedule C.

We have sustained the tax deficiency for 1997 on the basis of caselaw (including decisions of this Court) holding that section 162(a) applies only to the expenses of an operating business.  It is clear, however, that the courts have not acted uniformly in dealing with the issue of whether and in what circumstances preoperating expenses may be treated as currently deductible business expenses.  In some cases (contrary to the above-cited decisions of this Court) courts have permitted a section 162(a) business expense deduction for preoperating expenses.  See, e.g., 379 Madison Ave., Inc. v. Commissioner, 60 F.2d 68 (2d Cir. 1932) (a net loss attributable to rent, real estate taxes, and interest paid during the construction of a building first ready for occupancy by tenants in a subsequent taxable year held deductible as part of a net loss from a "business regularly carried on"), revg. and remanding 23 B.T.A. 29 (1931); Blitzer v. United States, 47 AFTR 2d 81-1005, at 81-1019, 81-1 USTC par. 9262, at 86,633 (Ct. Cl. 1981) (in dicta, the court states that preoperating expenses that are recurring in nature and do not provide benefits extending beyond the taxable year may be deductible under section 162); United States v. Manor Care, Inc., 490 F. Supp. 355, 362 (D. Md. 1980) (preoperating

expenses incurred by a nursing home taxpayer in the same taxable year in which the required nursing home licenses were later issued and operations were later commenced held to be deductible business expenses under section 162(a) in the year incurred);[9] see also <u>Carter-Colton Cigar Co. v. Commissioner</u>, 9 T.C. 219, 221 (1947) (vacant lot intended as the site for a warehouse and store building to be used in the taxpayer's tobacco business, the construction of which was abandoned due to adverse economic circumstances, held to constitute an asset "used in the trade or business of [the taxpayer]" thereby giving rise to ordinary rather than capital loss on the sale of the lot).

The foregoing cases all involve expenses (or the acquisition and sale of property) preparatory and related to a specific business (or business use) that is either certain or anticipated to commence in the near future. In contrast, the evidence in this case indicates that petitioner's 1997 expenses were incurred before any firm expectation of a specific business use for petitioner's investment properties. That is a factual distinction that one might reasonably expect an experienced tax professional to make, but not a physics professor, even one with a Ph.D.[10] Therefore, we find the caselaw permitting a business

---

[9] See <u>Goodwin v. Commissioner</u>, 75 T.C. 424, 433 n.8 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982), wherein we question the District Court's analysis.

[10] There is no evidence that petitioner has any training or
(continued...)

expense deduction for preoperating expenses to be indicative of the fact that petitioner's position was not unreasonable and, therefore, not negligent; and that, in any event, petitioner acted in good faith and with reasonable cause in treating the expenses listed on his 1997 Schedule C as ordinary and necessary business expenses under section 162(a).  See sec. 1.6664-4(b)(1), Income Tax Regs.; see also Keller v. Commissioner, T.C. Memo. 1996-300 (college professor who improperly claimed a travel expense deduction for a sabbatical trip during which he engaged in study unrelated to the stated sabbatical purpose acted in good faith and was not liable for the accuracy-related penalty where there were no regulations or other forms of clear-cut guidance specifying the reach of section 274(m)(2), which denies a deduction for the expense of travel as a form of education).

Nor do we agree with respondent that negligence and intentional disregard are shown by petitioner's alleged failure to maintain and produce books and records to support his claimed Schedule C deductions as required by section 6001.  It is not always necessary that a taxpayer maintain a formal set of readily auditable books in order to satisfy the books and records requirement of section 6001 and section 1.6001-1(a), Income Tax Regs.  See Westby v. Commissioner, T.C. Memo. 2004-179.  At

---

[10](...continued)
background (other than in the preparation of his own returns) in the area of Federal income taxation.

trial, petitioner presented documentary evidence, by category, of a portion of his claimed 1997 expenses. Moreover, the examining agent's 1997 Explanation of Items treats as either deductible on Schedule A, capitalizable, or nondeductible "personal or estate expenses" all but $8,292 of petitioner's total 1997 Schedule C expenses, which indicates that petitioner substantiated all but $8,292 of those expenses during the audit.

Petitioner claimed 1997 Schedule C expenses of $75,388 and, at trial, offered documentary evidence that, at best, substantiates the expenditure of approximately one-half of that amount. That lack of substantiation in the record supports the examining agent's determination that petitioner's Schedule C deductions included $8,292 of unsubstantiated expenses, and we so find. Therefore, in accordance with section 1.6662-3(b)(1), Income Tax Regs. (negligence includes "any failure by the taxpayer * * * to substantiate items properly"), we sustain the negligence penalty with respect to petitioner's 1997 underpayment attributable to $8,292 of unsubstantiated expenses.

Decision will be entered under Rule 155.