# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2978

_____

Paul S. Lindsey, Jr.; Kristen Lindsey,    *
                                      *
         Petitioners,                *
                                        *
      v.                                *   Appeal from the
                                        *   United States Tax Court.
Commissioner of Internal Revenue,    *
                                        *
         Respondent.              *

_____

Submitted: April 15, 2005
Filed: September 2, 2005

_____

Before WOLLMAN, HANSEN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

In December 1996, Paul S. Lindsey, Jr. (Lindsey), then controlling owner, chairman, and chief executive officer of Empire Gas Corporation (EGC), received $2 million as part of a final corporate settlement. Lindsey received the payment "in settlement of his claims for tortious interference with contracts, for personal injury including injury to Mr. Lindsey's personal and professional reputation and emotional distress, humiliation and embarrassment resulting from termination of the Synergy

Acquisition documents." When Lindsey and his wife[1] (Lindseys) filed their 1996 federal tax return on January 15, 1998, they did not include the $2 million settlement in their gross income. Instead, the Lindseys reported a tax liability of zero. In July 2002, the Internal Revenue Service (IRS) issued a Notice of Deficiency for the 1996 and 1997 tax years, assessing deficiencies[2] in the amount of $729,749 and penalties exceeding $315,000. The Lindseys filed a petition for redetermination of the deficiencies and penalties, and the United States Tax Court[3] entered a decision ruling in favor of the Internal Revenue Commissioner (Commissioner). The Lindseys appeal, and we affirm.

## I.    BACKGROUND

In 1995, EGC and a subsidiary, Northwestern Growth Corporation (NGC), were engaged in the liquified petroleum business and jointly formed SYN, Inc. (SYN), to acquire Synergy Group, Inc. (Synergy), which was also engaged in the liquified petroleum business. Lindsey actively negotiated the Synergy acquisition and pursued the potential acquisitions of other smaller propane companies for the benefit of SYN. In 1996, Lindsey negotiated a deal in which SYN would acquire Coast Gas, a large California propane retailer, for approximately $100 million. Near the same time, Lindsey discovered NGC and SYN were in acquisition negotiations with another propane company, Empire Energy, formerly part of EGC, for SYN to acquire Empire Energy for $100 million. Lindsey also discovered that NGC's intentions were that EGC would not manage SYN in the future.

---

[1]Kristen Lindsey is a named party because she filed joint federal tax returns with her husband. Her first name is spelled "Kristin" in the IRS filings and "Kristen" in this judicial proceeding.

[2]The IRS assessed a deficiency of $725,255 for the 1996 tax year and an additional deficiency of $4494 for the 1997 tax year.

[3]The Honorable Mary Ann Cohen, United States Tax Court.

During the spring and summer of 1996, business relations between EGC and NGC became strained. Believing NGC was violating an agreement between EGC and NGC pertaining to the management of SYN, Lindsey, through EGC, obtained a temporary restraining order in September 1996 enjoining SYN from acquiring Coast Gas and Empire Energy. Eventually, the parties reached a final settlement and executed a "Termination Agreement," wherein EGC was to receive a cash payment of either $20 million or $15 million, depending on whether the Coast Gas and Empire Energy acquisitions closed on or after June 30, 1997. The Termination Agreement also included this provision:

> (e) NGC and Paul S. Lindsey, Jr. hereby agree that, in exchange for the written general release from Mr. Lindsey . . ., $2,000,000 of the Payment Amount shall be allocated to Mr. Lindsey, as the controlling shareholder of EGC, in settlement of his claims for tortious interference with contracts, for personal injury including injury to Mr. Lindsey's personal and professional reputation and emotional distress, humiliation and embarrassment resulting from termination of the Synergy Acquisition documents, and Mr. Lindsey shall provide consulting services to NGC as the parties may agree; *provided, however*, that this Section 3(e) does not constitute an admission by NGC or SYN of any such liability for any purpose.

The parties executed the Termination Agreement as of September 28, 1996, and Lindsey received the $2 million payout on December 17, 1996.

The Lindseys obtained a four-month extension to file their 1996 federal income tax return, but did not file their 1996 tax return until January 15, 1998. On July 26, 2002, the Commissioner sent a Notice of Deficiency, explaining that, "during the taxable year 1996, you received income in the amount of $2,000,000.00 from the Northwestern Growth Corporation which was not shown on your return," thereby increasing the Lindseys' 1996 taxable gross income by $2 million. For the 1996 tax

year, the Commissioner assessed the corrected income tax liability at $725,255, a failure-to-file timely penalty under Internal Revenue Code (I.R.C.) § 6651(a)(1) in the amount of $171,058 and an accuracy-related penalty under I.R.C. § 6662(a) in the amount of $145,051.

The Lindseys filed a petition in the Tax Court, alleging the Commissioner erred in determining the $2 million in settlement proceeds was includable as taxable gross income and in imposing failure-to-file timely and accuracy-related penalties. The Tax Court found the Small Business Job Protection Act of 1996 (SBJPA), Pub. L. 104-188, § 1605, 110 Stat. 1838, amended I.R.C. § 104(a)(2) by denying the former exclusion from gross income for damages received for nonphysical injuries. The Tax Court further determined the symptoms Lindsey suffered–fatigue, indigestion, and insomnia–comprise "the types of injuries or sicknesses that Congress intended to be encompassed within the definition of emotional distress." Even assuming Lindsey suffered personal physical injury or physical sickness within the meaning of I.R.C. § 104(a)(2), the Tax Court reasoned Lindsey had not communicated any physical injury or sickness to NGC representatives during settlement negotiations, and NGC was completely unaware Lindsey suffered physical injury or sickness, making it inconceivable his physical injury or sickness could have been the basis for any portion of the settlement payment. The Tax Court held the $2 million in settlement proceeds was includable as gross income and affirmed the Commissioner's deficiency determination, as well as the imposition of failure-to-file timely and accuracy-related penalties.

On appeal, the Lindseys argue the Tax Court erred in finding I.R.C. § 104(a)(2), as amended, applied to the settlement payment at issue, claiming the amendment was not effective until after 1996. The Lindseys also contend the Tax Court erred in finding the physical sickness Lindsey suffered was a type not excludable under I.R.C. § 104(a)(2).

## II.   DISCUSSION

### A.   Effective Date of Amendment

Section 61(a) of the Internal Revenue Code defines gross income as "all income from whatever source derived." I.R.C. § 61(a). The Supreme Court has broadly construed and repeatedly emphasized the "sweeping scope" of this section. See Commissioner v. Schleier, 515 U.S. 323, 327 (1995); see also Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429 (1955). The corollary to I.R.C. § 61(a)'s expansive construction is "that exclusions from income must be narrowly construed." Schleier, 515 U.S. at 328 (quoting United States v. Burke, 504 U.S. 229, 248 (1992) (Souter, J., concurring)). Thus, Lindsey's $2 million in settlement proceeds is presumed to be taxable income unless Lindsey can show the income is "expressly excepted by another provision in the Tax Code." Id.

On appeal, the Lindseys argue damages due to personal injuries and physical sickness were excluded under I.R.C. § 104(a)(2) at the time of Lindsey's settlement negotiations and receipt of funds. Originally, I.R.C. § 104(a)(2) excluded from gross income any damages received for "personal injuries or sickness." The I.R.S. and courts construed the original statutory exclusion language to incorporate nonphysical injuries, such as emotional injuries and injuries to one's reputation and character. See Roemer v. Commissioner, 716 F.2d 693, 697 (9th Cir. 1983) (citing I.R.S. opinion supporting circuit court's ruling that "all damages received for nonphysical personal injuries are excludable from gross income" under I.R.C. § 104(a)(2)). We review the Tax Court's conclusions of law de novo, and its fact findings for clear error. See Oren v. Commissioner, 357 F.3d 854, 857 (8th Cir. 2004) (standard of review) .

Congress subsequently revised I.R.C. § 104(a)(2) in August 1996. See SBJPA, Pub. L. 104-188, § 1605(a), 110 Stat. 1755, 1838. As amended, I.R.C. § 104(a)(2) now excludes from gross income only "the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump

sums or as periodic payments) on account of personal physical injuries or physical sickness." I.R.C. § 104(a)(2). Hence, damages for nonphysical injuries no longer qualify for the gross income exclusion. Mayberry v. United States, 151 F.3d 855, 858 n.2. (8th Cir. 1998) (declaring "[s]ection 104(a)(2) was amended in 1996 to exclude 'emotional distress' damages from the gross income exclusion"). Pursuant to the SBJPA, "the amendments made by this section shall apply to amounts received after the date of the enactment of this Act, in taxable years ending after such date." See SBJPA, Pub. L. 104-188, § 1605(d), 110 Stat. 1839; see also Mayberry, 151 F.3d at 858 n.2. Congress enacted the SBJPA on August 20, 1996. See SBJPA, Pub. L. 104-188, 110 Stat. 1755. The Termination Agreement was executed as of September 28, 1996, and payment of the $2 million was made to Lindsey on December 17, 1996.

Lindsey submits the clear language of the statute states the effective date of the SBJPA is the tax year ending after the date of its enactment, that is, the tax year ending December 31, 1997. Since Lindsey received the settlement payment in 1996, Lindsey claims the amendment to I.R.C. § 104(a)(2) does not apply, and his settlement proceeds are not includable as gross income. The Commissioner counters that a damages payment received after August 20, 1996, as occurred in this case, falls squarely after the effective amendment date. Had Congress intended the amendment to apply only to damages received after December 31, 1996, the Commissioner contends, Congress could have so stated, "without referring to the effective date of the amendment or to the taxable year in which an amount is received." We agree with the Commissioner, and conclude the plain language of the SBJPA indicates its amendments apply to damages received after August 20, 1996. Therefore, the $2 million settlement payment is includable in the Lindseys' gross income for the tax year ending December 31, 1996.

Lindsey claims the amendment to I.R.C. § 104(a)(2) constitutes an impermissible retroactive application of a new tax. However, I.R.C. § 104(a)(2) is

not a retroactive provision, because it applies prospectively to damages received after August 20, 1996. Thus, the amendment does not affect the gross income exclusion available for personal injury damages received before the effective date of the amendment. Lindsey also contends making the amendment to I.R.C. § 104(a)(2) effective for amounts received after August 20, 1996, imposes a fortuitous windfall on some taxpayers while imposing a penalty on others. Such is true of any tax change.

### B.     Personal Physical Injury or Physical Sickness

Even if the 1996 amendment to I.R.C. § 104(a)(2) applies to the $2 million damages settlement, Lindsey argues he is entitled to exclude the settlement proceeds, because he received the payment as damages for physical sickness. Before a recovery may be excluded under I.R.C. § 104(a)(2), a taxpayer must establish two independent criteria: (1) prosecution or settlement of an underlying claim based on tort or tort-type rights, and (2) receipt of damages "on account of personal [physical] injuries or [physical] sickness." Schleier, 515 U.S. at 337.

Because some of the claims specified in the Termination Agreement were based in tort, Lindsey arguably satisfies the first prong. However, a taxpayer can satisfy the second criterion only by establishing "a direct causal link" between the damages and the personal injuries or physical sickness sustained. See Banaitis v. Commissioner, 340 F.3d 1074, 1080 (9th Cir. 2003), abrogated on other grounds by Commissioner v. Banks, 125 S. Ct. 826, 829 (2005); Fabry v. Commissioner, 223 F.3d 1261, 1270 (11th Cir. 2000). This "direct causal link" inquiry, in turn, requires us to perform a fact-specific analysis of the damages award. Lindsey's physician, Dr. William Taylor, testified that, during the energy acquisition and settlement negotiations from 1995 to 1997, Lindsey suffered from hypertension and stress-related symptoms, including periodic impotency, insomnia, fatigue, occasional indigestion, and urinary incontinence. We agree with the Tax Court that these health

symptoms relate to emotional distress, and not to physical sickness. Importantly, NGC, the payor of the settlement award, was never made aware Lindsey was suffering any physical sickness, thereby belying the existence of a direct causal link between any physical sickness suffered by Lindsey and damages paid out to him.

Lindsey opted to take an all-or-nothing approach, claiming the entire $2 million is physical sickness settlement damages and is excludable as taxable income. The Termination Agreement identifies Lindsey's nonphysical tort claims for damage to his emotions, reputation and character, which damages are no longer excludable as gross income following the enactment of the 1996 amendment. The Termination Agreement also identifies Lindsey's damage claims for interference with contract, which clearly constitute economic damages. The same Termination Agreement provision further requires Lindsey to "provide consulting services to NGC," which implies the parties may have intended some portion of the $2 million payment to be compensation for future consulting services.

Lindsey fails to establish the second criterion, because he has not identified what percentage of the settlement damages is allocable to physical injury or physical sickness, and the record lacks any evidentiary basis for concluding a specific portion of the $2 million settlement payment is allocable to Lindsey's physical injury or physical sickness. Therefore, the tax court properly denied the exclusion. Bagley v. Commissioner, 121 F.3d 393, 395, 397 (8th Cir. 1997) ("When assessing the tax implications of a settlement agreement, courts should neither engage in speculation nor blind themselves to a settlement's realities.").

## C.    Penalties Assessed

Lindsey stipulated the amount of liability for failure-to-file timely and accuracy-related penalties hinges upon the panel's resolution of the I.R.C. § 104(a)(2) exclusion issue. Because we have determined the Tax Court properly denied the

exclusion, Lindsey is liable for the penalties assessed under I.R.C. §§ 6651(a)(1) and 6662(a).

## III.  CONCLUSION

We affirm the well-reasoned decision of the Tax Court.

_____