T.C. Summary Opinion 2007-126


UNITED STATES TAX COURT


JODY SCHOOLCRAFT-BURKEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17437-06S.                    Filed July 24, 2007.


Jody Schoolcraft-Burkey, pro se.

<u>Anita A. Gill</u> and <u>Cathy J. Horner</u>, for respondent.


JACOBS, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  Pursuant to section 7463(b),

---

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year in issue,
and Rule references are to the Tax Court Rules of Practice and
Procedure.

the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $24,823 deficiency in petitioner's 2003 Federal income tax and a $4,965 accuracy-related penalty under section 6662. The issues for decision are: (1) Whether all payments petitioner received from his former employer, Mahoning Valley Economic Development Corp. (MVEDC), pursuant to the settlement of a lawsuit are includable in income; (2) whether petitioner may deduct attorney's fees he paid in bringing a lawsuit against MVEDC; (3) whether petitioner paid deductible expenses which would offset income he received in the performance of consulting services; and (4) whether petitioner is liable for an accuracy-related penalty under section 6662.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Niles, Ohio.

Petitioner, as a married taxpayer filing separately, timely filed a Form 1040, U.S. Individual Income Tax Return, for 2003 in which he reported total income of $46,479, tax of $6,416, and tax payments of $7,586. Both petitioner and his wife claimed the standard deduction for 2003 in their separate returns.

On the basis of third-party information reported to the IRS, respondent determined that petitioner failed to report relatively small amounts of capital gain/dividend income, interest income, and pension/annuity income (investment income), as well as $17,818 of nonemployee consulting compensation and $58,000 of the $85,000 he received from MVEDC in connection with settlement of a lawsuit. See infra. Petitioner concedes error in his failure to report the various amounts of investment income, as well as the $17,818 of nonemployee consulting compensation, but he disputes the taxability of $58,000 of the $85,000 in settlement proceeds he received from MVEDC, claiming that portion was nontaxable compensation for personal injuries. Moreover, petitioner claims entitlement to deductions for certain expenses in connection with his lawsuit against MVEDC and in rendering his consulting services.

From 1980 until he was dismissed on July 27, 2000, petitioner was a loan officer for MVEDC. For several months before his dismissal, petitioner had been cooperating with the FBI and the U.S. Department of Justice in providing files, correspondence, and other documents pertaining to certain of MVEDC's activities. In 2003, petitioner brought suit against MVEDC[2] for terminating his

---

[2]Petitioner's lawsuit, in addition to naming MVEDC, included MVEDC's executive director and treasurer and Mahoning Valley Industrial Loan Fund as defendants.

employment, alleging that his discharge was in retaliation for his cooperation with Government officials.

In his complaint against MVEDC, petitioner claimed the following: Breach of contract, intentional breach of contract, infliction of emotional distress, promissory estoppel, principal and agent relationship--breach of fiduciary duty, breach of fiduciary duty, equitable claim for unjust enrichment, public policy and common law, tortious interference with contractual relationship, and civil conspiracy. The complaint made no reference to any State or Federal statute, such as a whistleblower protection regime or civil rights legislation, as a possible basis for relief. In his complaint, petitioner demanded, in addition to equitable relief such as reinstatement, "compensatory damages in an amount in excess of $25,000" and "punitive damages in an amount in excess of $25,000."

In connection with his claim based on intentional breach of contract, petitioner alleged that he suffered "adverse health effects". In connection with his claim based on infliction of emotional distress, petitioner alleged that he suffered "physical injury in the form of adverse health effects." In connection with his claim based on public policy and common law, petitioner alleged that he suffered "physical pain and distress". The complaint did not allege that petitioner sustained any other personal physical injury or physical sickness, and it did not

explain or describe the "adverse health effects", "physical injury", or "physical pain" petitioner claimed to have suffered.

Petitioner entered into a settlement with MVEDC on or about December 1, 2003, in which petitioner agreed to dismissal of his lawsuit in exchange for $85,000.  The settlement agreement designated $27,000 of the $85,000 in settlement proceeds as "back pay" or "lost wages", and petitioner agrees that the $27,000 is taxable.

The settlement agreement designated the remaining $58,000 of the $85,000 as compensation for:

> any emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, fright, nervousness, indignity, humiliation, embarrassment and other personal injuries that Burkey claims to have suffered, as well as in exchange for his release of any common law and statutory causes of action for sexual harassment, sex or gender discrimination, age discrimination, disability discrimination, personal injury, retaliation, wrongful discharge, constructive discharge, claims of discrimination or harassment on any basis, claims alleging whistleblowing under state or federal law, claims of breach of public policy, breach of fiduciary duty, breach of express or implied contract, breach of any employment agreement, conspiracy, interference with employment contract, unjust enrichment, invasion of privacy, fraud, conversion, intentional infliction of mental distress, promissory estoppel, defamation, intentional interference with any contract or business relationship and any other claims of any kind that Burkey may possess against MVEDC.

The settlement agreement specified that MVEDC would not withhold any taxes from the $58,000 portion of the $85,000 payment and that MVEDC made "no representation or warranty whatsoever concerning the tax consequences of Burkey's receipt of any monetary payments

from MVEDC".  MVEDC reported the $58,000 portion to the IRS by means of Form 1099-MISC, Miscellaneous Income, as "other income".  Petitioner did not report the $58,000 portion on his 2003 return.

At trial, petitioner continued to maintain that the $58,000 portion was compensation for personal injuries and not includable in income.  He further claimed that he was entitled to a deduction for attorney's fees he paid in connection with his lawsuit against MVEDC.  Additionally, petitioner claimed he paid deductible expenses in connection with the production of the $17,818 in consulting income.  Finally, petitioner, who resided in a home owned by his daughter and paid no rent to her in 2003, claimed that rent he would have paid had he been required to pay rent, together with an array of other expenses, was deductible and that he should have deducted those expenses on a Schedule C, Profit or Loss From Business,[3] with his 2003 return.

---

[3]Petitioner did not attach a Schedule C to his 2003 return.  At trial, petitioner submitted a handwritten page dated Apr. 14, 2007, captioned "Amended 2003 Schedule 'C'", on which deductions totaling $14,498 for "rent, phone, advertising/ cards/supplies/ meals, mileage/travel, misc/membership" were listed.  This summary was revised during the trial to show a corrected total of $11,065.50 of deductions for "rent, mileage/travel" and "misc/membership".  In addition, at trial petitioner submitted a statement in which he claimed a deduction for the "equivalent of lost medical insurance coverage."

Discussion

Petitioner has neither claimed nor shown that he satisfied the requirements of section 7491(a) to shift the burden of proof to respondent. Hence, petitioner bears the burden of proving that respondent's deficiency determinations are incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

It is well established that, pursuant to section 61(a), gross income includes all income from whatever source derived unless otherwise excluded by the Internal Revenue Code. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 429-431 (1955). Exclusions from gross income are construed narrowly. Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995). Generally, amounts received for damages are excludable from gross income if: (1) The taxpayer demonstrates that the underlying cause of action giving rise to the recovery is based upon tort or tort type rights, and (2) the taxpayer shows that the damages were received on account of personal injuries or sickness. Id. at 336.

The specific exclusion upon which petitioner relies is found in section 104. Section 104, as relevant here, provides:

SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.

(a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

* * * * * * *

    (2) the amount of any damages (other than
punitive damages) received (whether by suit or
agreement and whether as lump sums or as periodic
payments) on account of personal physical injuries
or physical sickness;

            *    *    *    *    *    *    *

* * * For purposes of paragraph (2), emotional distress
shall not be treated as a physical injury or physical
sickness. * * * [4]

"Damages received" means amounts received "through prosecution of

a legal suit or action based upon tort or tort type rights, or

through a settlement agreement entered into in lieu of such

prosecution."  Sec. 1.104-1(c), Income Tax Regs.

When damages are received pursuant to a settlement agreement,

courts decide the purpose or purposes for which a payment was made

by considering, inter alia, the following:  (1) The underlying

complaint and the nature of the claims; (2) the settlement

negotiations and settlement agreement; and (3) the intent of the

payor.  See United States v. Burke, 504 U.S. 229, 237-239 (1992);

Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg.

89 T.C. 632 (1987); Knuckles v. Commissioner, 349 F.2d 610, 612-

613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Bagley v.

---

⁴Sec. 104 was amended by the Small Business Job Protection
Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838, to
provide, with respect to amounts received after Aug. 20, 1996,
that the personal injury or sickness for which the damages are
received must be physical in nature.

<u>Commissioner</u>, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

Petitioner's complaint does not specify the physical injury he suffered as a result of MVEDC's conduct. There is nothing in the record to indicate that petitioner either suffered a particular physical injury or physical sickness or informed MVEDC that he was suffering from a particular physical injury or physical sickness as a result of his discharge. In fact, the settlement agreement does not refer to physical injury or physical sickness. Rather, it enumerates other types of injuries such as emotional pain, suffering, inconvenience, mental anguish, etc., as well as injuries that petitioner never alleged, such as sexual harassment and discrimination. Hence, it appears that MVEDC's intent in entering into the settlement agreement was to secure a broad, general release from petitioner, rather than to compensate him for physical injury or sickness.

Petitioner did not submit any medical records showing that he received treatment for physical injuries, and the record is devoid of any detailed description of what those injuries might have been.[5] In sum, we do not find any basis in this record upon which

---

[5]In a posttrial memorandum filed with the Court, petitioner described having symptoms such as "anxiety, chronic pain (with physical symptoms such as high blood pressure, increased pulse and respiration), compulsions, delusions, denial and depression." Stress-related symptoms such as these relate to emotional distress and not to physical sickness. See <u>Lindsey v.</u>

(continued...)

we could make a rational allocation of MVEDC's $58,000 payment to compensation for physical harm, if indeed petitioner suffered physical harm within the meaning of section 104. Therefore, the entire $85,000 settlement payment is includable in petitioner's income.

In bringing his lawsuit against MVEDC, petitioner retained an attorney whom he compensated on an hourly basis. Petitioner made periodic payments to his attorney beginning in 2002, and he paid $11,920 in legal fees during 2003. At trial, petitioner claimed that his 2003 legal fees were deductible.

Generally, legal fees are deductible under section 162 only if the matter with respect to which the fees were paid originated in the taxpayer's trade or business and only if the claim is sufficiently connected with that trade or business. See United States v. Gilmore, 372 U.S. 39 (1963); Biehl v. Commissioner, 118 T.C. 467, 479 (2002), affd. 351 F.3d 982, 985 (9th Cir. 2003); Test v. Commissioner, T.C. Memo. 2000-362, affd. 49 Fed. Appx. 96 (9th Cir. 2002). Expenses not incurred in a trade or business activity but in the production or collection of income are deductible as miscellaneous itemized deductions on Schedule A, Itemized Deductions. Secs. 67(b), 212(1). Further, it is well established that even though a taxpayer's employee status may be

---

[5](...continued)
Commissioner, T.C. Memo. 2004-113, affd. 422 F.3d 684 (8th Cir. 2005).

regarded as a trade or business, legal fees stemming from a taxpayer's employee status are to be treated as miscellaneous itemized deductions, subject to the 2-percent floor.[6]  See sec. 62(a)(1); see also Commissioner v. Banks, 543 U.S. 426, 432 (2005); McKay v. Commissioner, 102 T.C. 465, 493 (1994), vacated on other grounds without published opinion 84 F.3d 433 (5th Cir. 1996); Test v. Commissioner, supra; Alexander v. Commissioner, T.C. Memo. 1995-51, affd. 72 F.3d 938 (1st Cir. 1995).

It is undisputed that petitioner was an employee of MVEDC and that the legal fees petitioner paid stemmed from that relationship.  Therefore, the legal fees of $11,920 petitioner paid to his attorney relating to the settlement of petitioner's claims against MVEDC would have been deductible on Schedule A, Itemized Deductions.

Petitioner did not file a Schedule A with his 2003 return but instead claimed the standard deduction.  Petitioner's spouse also filed a separate return for 2003 and claimed the standard deduction.  As a consequence, respondent contends that petitioner

---

[6]The excess unreimbursed employee and other miscellaneous expenses deduction is claimed on Schedule A, Itemized Deductions. The amount of the deduction equals the sum of:  (1) Unreimbursed employee expenses--job travel, union dues, job education, etc.; (2) tax preparation fees; and (3) other expenses--investment, safe deposit box, etc., less an amount equal to 2 percent (the 2-percent floor) of the taxpayer's adjusted gross income.  See sec. 67(a).

is precluded from itemizing his deductions by the provisions of section 63(e) and section 6013(b).

Section 63(e) provides that taxpayers must elect to itemize deductions, and this election is to be made on the taxpayer's return.  Sec. 63(e)(1) and (2).  A taxpayer may change his election after filing the return, but if the taxpayer's spouse filed a separate return for the same taxable year, section 63(e)(3) provides:

> the change shall not be allowed unless * * *
>      (A) the spouse makes a change of election with respect to itemized deductions, for the taxable year covered in such separate return, consistent with the change of treatment sought by the taxpayer, and
>      (B) the taxpayer and his spouse consent in writing to the assessment (within such period as may be agreed on with the Secretary) of any deficiency, to the extent attributable to such change of election * * *

Petitioner did not elect to itemize deductions either on his original return or by means of an amended return.  Even were we to construe petitioner's submissions at trial as an attempt to elect itemization under section 63(e), the statutory requirements of that section have not been met.  See Boyd v. Commissioner, T.C. Memo. 2003-286.  Therefore, petitioner is not entitled to itemize his deductions for 2003; consequently, he cannot claim any deduction for legal fees he paid.

Petitioner concedes that he received nonemployee compensation of $17,818 for consulting services.  Petitioner did not report this income on his 2003 return, nor any expenses associated with

the production of that income.  The "Amended 2003 Schedule 'C'" that petitioner submitted at trial, see supra note 3, was prepared shortly before trial and represents a reconstruction of expenses petitioner believed he paid.  Amounts shown on the Schedule C were revised at trial to show a rent expense of $5,369,[7] a mileage/travel expense of $5,546.50, and a misc./membership expense of $150.

Petitioner testified that although he used portions of his dwelling for purposes of meeting clients for the first 9 months of 2003, he neither owned nor paid rent for the premises.  Moreover, he did not pay specifically for utilities, telephone, or Internet services.  Rather, he contributed to the general upkeep of the home, where he resided with his wife.  The amount he determined deductible as rent was the amount that he theoretically would have paid for that portion of the home he used for his consulting activities had there been a third-party landlord, as well as a portion of the utilities, telephone, and Internet services that were allocable, in petitioner's view, to his consulting activities.  Petitioner did not submit any documentary substantiation (such as utility bills or telephone bills) in support of his claimed deduction for expenses paid in using a portion of his home for his consulting activities.

---

[7]Petitioner clarified that $5,369 represents the total amount for rent, utilities, telephone, and Internet services.

While we accept that petitioner used a portion of his dwelling for consulting activities, we are unable to determine the amounts, if any, of expenses he paid in connection with that activity. The fact that petitioner contributed to general household expenses does not suffice to convert those personal living expenses into home office business expenses. Moreover, it is not clear that any transfer of funds actually took place in the first 9 months of 2003, and no other taxpayer (i.e., petitioner's daughter, who held title to the home, or his wife) reported any rental income from the dwelling. In sum, petitioner has not proven entitlement to any deduction for rent for the first 9 months of 2003 or to a deduction for utilities, telephone, or Internet services.

For the last 3 months of 2003, petitioner moved his place of business to different premises. Petitioner credibly testified (and substantiated) that he paid rent of $600 per month for the last 3 months of 2003 to an unrelated third-party landlord. Petitioner is therefore entitled to a $1,800 deduction for a rent expense in carrying on his consulting activity in 2003.

Petitioner claimed a $5,546 deduction for "mileage/travel" expenses paid in connection with his consulting activity. In support of the claimed deduction, petitioner submitted records showing the number of miles he traveled each month and a description of the purpose of the travel. The records were

prepared contemporaneously with the travel. Petitioner testified that he kept the travel records in an effort to determine, during 2003, whether the income from his consulting activity was sufficient to cover his expenses.

Section 274 provides that expenses paid or incurred with respect to travel and certain listed property are deductible only if the taxpayer meets the stringent substantiation requirements of section 274(d). See sec. 280F(d)(4)(A). For these expenses, only certain types of documentary evidence will suffice. Passenger automobiles are listed property under section 280F, and therefore strict substantiation for their use as transportation is required. Sec. 274(d). No deduction is allowed for any travel or transportation expense unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement the amount of the expense, the mileage for each business use of the automobile and the total mileage for all use of the automobile during the taxable period, the date of the business use, and the business purpose for the use. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). Adequate records include the maintenance of an account book, diary, log, statement of expense, trip sheets, and/or other documentary evidence, which, in combination, are sufficient to establish each element of expenditure or use. Sec.

1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

Petitioner submitted a travel log consisting of 12 pages, one for each month of 2003. The purpose for the claimed travel expense is indicated on every page as "Travel from Niles to Steubenville and return" or "Travel from Niles to Steubenville/Lisbon et al and return". The description of the travel is shown on every page as "Client calls at Chamber/Commerce" and/or "Client calls at One Stop Center". Actual travel on specific days is not shown; rather, monthly totals are given. Specific client names are not provided (or itemized with identifying information redacted). The nature of the business discussions petitioner conducted is not shown. We are unable to conclude from petitioner's travel log that the strict substantiation requirements of section 274 have been met. Accordingly, the claimed mileage/travel expenses are not deductible.

At trial, petitioner claimed that he is entitled to a deduction for "lost medical insurance coverage". Petitioner testified that during 2003 he did not have insurance coverage and did not pay any amounts for medical insurance. His claimed deduction is based on amounts he estimated that he would have paid if he had purchased such insurance. Because petitioner did not pay this expense, he is not entitled to this deduction.

Finally, petitioner claimed that he is entitled to a $150 deduction for the membership fee to join the Jefferson County Chamber of Commerce. Petitioner testified, and we believe, that he joined the Chamber of Commerce in order to achieve more recognition for his business. This expense is deductible under section 162.

As noted supra, respondent determined a section 6662(d) penalty of $4,965 for 2003. Pursuant to section 6662(a) and (b)(2), a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax attributable to a substantial understatement of income tax. The term "understatement" means the excess of the amount of tax required to be shown on a return over the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)). Sec. 6662(d)(2)(A). Generally, an understatement is a "substantial understatement" when the understatement exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return. Sec. 6662(d)(1)(A). The Commissioner has the burden of production with respect to the accuracy-related penalty. Sec. 7491(c). To meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the Commissioner meets this burden of production, the taxpayer must

come forward with persuasive evidence that the Commissioner's determination is incorrect. Rule 142(a); see <u>Higbee v. Commissioner</u>, <u>supra</u> at 447. The taxpayer may meet this burden by proving that he or she acted with reasonable cause and in good faith. See sec. 6664(c)(1); see also <u>Higbee v. Commissioner</u>, <u>supra</u> at 448; sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent has met his burden of production under section 7491(c). Petitioner's 2003 return contains an understatement of tax greater than $5,000 (which is greater than 10 percent of the amount of tax required to be shown on the return). See sec. 6662(d)(1)(A)(ii). Accordingly, petitioner bears the burden of proving that the accuracy-related penalty should not be imposed with respect to any portion of the underpayment for which he acted with reasonable cause and in good faith. See sec. 6664(c)(1); <u>Higbee v. Commissioner</u>, <u>supra</u> at 446. Petitioner did not carry his burden of showing that his omissions from income which resulted in the underpayment were made with reasonable cause and in good faith. Accordingly, petitioner is liable for the section 6662(a) penalty.

<u>Decision will be entered under Rule 155</u>.