T.C. Summary Opinion 2017-74

UNITED STATES TAX COURT

EDWARD COLLINS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16245-15S.                    Filed September 11, 2017.

Edward Collins, pro se.

<u>Kathleen K. Raup</u>, for respondent.

SUMMARY OPINION

HALPERN, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463[1] of the Internal Revenue Code in effect when the petition was filed.

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986, as amended and in effect for 2012, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Respondent determined a deficiency in petitioner's 2012 Federal income tax of $29,750. The only issue for decision is whether $85,000 received by petitioner during 2012 in settlement of a lawsuit and described in a settlement term sheet as "payable * * * for emotional distress" is excludable from his 2012 gross income. We conclude that it is not.

Petitioner bears the burden of proof. See Rule 142(a).[2]

### Background

Petitioner resided in New Jersey when he filed the petition. The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and documents stipulated are accepted as authentic.

Petitioner began working at Public Service Electric & Gas (PSE&G) in 1972. In March 2010, petitioner was transferred to work out of PSE&G's office in Audubon, N.J., and was subjected to a racially hostile work environment. In January 2011, petitioner's doctor diagnosed him with depression, general anxiety

---

[2]Petitioner has not raised the applicability of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations. We conclude that sec. 7491(a) does not apply here because petitioner has not produced any evidence that he has satisfied the preconditions for its application.

disorder, hypertension, blood clots, and muscle spasms.  Petitioner left work on disability leave.  In May 2011, he brought suit against PSE&G in New Jersey State court.  He set forth three counts:  (1) PSE&G had subjected him to a racially hostile work environment, (2) it had discriminated against him on account of his race, and (3) it had retaliated against him on account of his complaints of discrimination.  In support of the first two counts, petitioner averred, among other things, that his PSE&G supervisor had required him to perform work in a more burdensome manner than that required of white individuals in comparable positions by, for instance, giving him more meter-reading stops on Saturdays than were given to white employees.  In each count, in addition to alleging that, as a result of PSE&G's actions, he had suffered a financial loss, petitioner alleged that, as a result of PSE&G's action, he had "suffered severe emotional distress and anxiety, with physical manifestations, including high blood pressure".  Also, as part of each count, he alleged that PSE&G's harassment and discrimination against him had "caused him to begin talking [sic] anti-depressant medication and to be treated by both a therapist and psychiatrist."  Among petitioner's demands for relief were demands for lost wages, benefits, insurance and pension coverage, and fringe benefits.  Separately, petitioner also demanded that the court order PSE&G to compensate him "for the severe emotional distress, humiliation, and anguish he

has suffered on account of defendant's unlawful conduct". Petitioner demanded no compensation for any physical injury or physical sickness. In March 2012, petitioner, through his attorneys, and PSE&G settled the lawsuit, and each party, acting at arm's length and in good faith, executed a settlement term sheet (term sheet) to memorialize the terms of settlement. The term sheet, referring only to the "matter" (and without reference to the individual counts), stated that PSE&G would pay petitioner the sum of $275,000 as follows:

(1) $90,000 payable to petitioner's attorneys;

(2) $15,000 to petitioner for reimbursement of his unpaid medical expenses;

(3) $85,000 to petitioner for emotional distress; and

(4) $85,000 to petitioner, less Federal and State withholding taxes.

PSE&G paid the amounts called for by the term sheet.

Petitioner made a timely return of Federal income tax for 2012 on Form 1040, U.S. Individual Income Tax Return. On line 21 of the Form 1040, petitioner reported as "Other income" the $85,000 received from PSE&G for emotional distress. On line 36 of the Form 1040 (a computational line, not calling for the inclusion or deduction of any amount), petitioner claimed a deduction of $85,000. The deduction apparently results from petitioner's contention that the $85,000 received for emotional distress and reported on line 21 is not taxable.

The deficiency in tax at issue here results principally from respondent's disallowance of the $85,000 deduction petitioner claimed on line 36 of his 2012 Form 1040.

## Discussion

I.     Introduction

As stated, we must determine whether the $85,000 that petitioner received for emotional distress from PSE&G pursuant to the term sheet (disputed $85,000) is excludable from his gross income.[3]  The parties have submitted legal memoranda concerning that issue.[4]

Damages (other than punitive damages) received on account of personal physical injuries or physical sickness may generally be excluded from gross income.  Sec. 104(a)(2).  Emotional distress is not treated as a personal physical injury or physical sickness.  Sec. 104(a) (flush language).  However, damages for

---

[3]Although technically, respondent adjusted petitioner's 2012 income by disallowing a deduction, the parties seem to agree (and we will treat it as such) that the question for decision is one of whether the disputed $85,000 is excludable from gross income.

[4]Petitioner has attached exhibits to his memorandum.  Attachments to briefs or to legal memoranda filed in lieu of a brief are not evidence, and we may not consider them.  E.g., Kanofsky v. Commissioner, T.C. Memo. 2006-79, aff'd, 271 F. App'x 146 (3d Cir. 2008); see Rule 143(c).  We will disregard those attachments.

emotional distress attributable to a physical injury or physical sickness are excluded from gross income under section 104(a)(2). Sec. 1.104-1(c)(1), Income Tax Regs. Also, damages not in excess of the amount paid for medical care attributable to emotional distress are excluded from gross income. Sec. 104(a) (flush language).

Petitioner argues that the disputed $85,000 was mischaracterized in the term sheet as payable to him for emotional distress when, "more accurately", it should have been shown as for "physical injury and physical sickness" (viz, "including high blood pressure") "as outlined in the * * * complaint."

Respondent argues that the term sheet clearly states that the disputed $85,000 was paid for emotional distress, and, "[e]ven if the Settlement Term Sheet were silent, it would be clear that the payment was not for physical injuries. There was no allegation in the complaint that petitioner suffered physical injuries or was seeking damages for physical injuries or sickness."

II.     Analysis

When damages are received pursuant to a settlement agreement, the nature of the claim underlying the settlement agreement controls whether a payment is excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Simpson v. Commissioner, 141 T.C. 331, 339 (2013), aff'd, 668 F. App'x

241 (9th Cir. 2016). An express allocation in the settlement agreement is generally binding for tax purposes provided the agreement was entered into by adversarial parties acting at arm's length and in good faith. Bagley v. Commissioner, 105 T.C. 396, 406 (1995), aff'd, 121 F.3d 393 (8th Cir. 1997). "The intent of the payor, and not the recipient, is critical in determining the validity of an express allocation in a settlement agreement." E.g., Gutierrez v. Commissioner, T.C. Memo. 2011-263, 2011 WL 5346643, at *3.

Certainly, the term sheet does state that the disputed $85,000 is to be paid to petitioner "for emotional distress" and not for any physical injury or physical sickness. And while in the complaint petitioner avers that he was required to make more meter-reading stops on Saturdays than white workers, he does not aver that he suffered physical injury or sickness from the extra work. The complaint states in the three counts that he suffered "severe emotional distress and anxiety, with physical manifestations" as the result of the company's racially hostile work environment, discrimination, and retaliation, not as the result of any physical injury or physical sickness. The complaint likewise claims that his depression was due to PSE&G's harassment and discrimination, and not due to physical injury or physical sickness. Petitioner's demands for relief contain a specific demand that PSE&G compensate him for "severe emotional distress, humiliation, and anguish",

but no demand for compensation for any physical injury or physical sickness. The parties have stipulated that petitioner and PSE&G executed the term sheet at arm's length and in good faith, each being represented by counsel. Petitioner has offered no persuasive evidence that the reason stated in the term sheet for the payment to him of the disputed $85,000--"payable to Plaintiff, Ed Collins, for emotional distress"--inaccurately describes PSE&G's intent in agreeing to the payment.

And while there may be some ambiguity as to what the parties to the term sheet intended to encompass within the meaning of the term "emotional distress", petitioner has failed to persuade us that the physical manifestations, including high blood pressure, that he may have suffered amount to physical injuries or physical sickness within the meaning of section 104(a). The legislative history of section 104(a) states it "is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H.R. Conf. Rept. No. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041. Therefore, the fact that a taxpayer suffers physical symptoms from emotional distress does not mean that damages received on account of the emotional distress qualify for exclusion from gross income under section 104(a)(2). See, e.g., Sanford v. Commissioner, T.C. Memo. 2008-158 (no exclusion for damages for emotional distress manifest by physical symptoms

including depression, skin irritation, appetite loss, asthma, sleep deprivation, and severe headaches). In Lindsey v. Commissioner, T.C. Memo. 2004-113, 2004 WL 10527772, at *5, aff'd, 422 F.3d 684 (8th Cir. 2005), while observing that untreated hypertension (high blood pressure) might lead to strokes, heart attacks, and kidney disease, we classified hypertension as the type of injury or sickness that Congress intended to be encompassed within the definition of emotional distress. See also Lindsey v. Commissioner, 422 F.3d at 688 (agreeing with the Tax Court that hypertension relates to emotional distress and not to physical sickness).

At trial, petitioner invited our attention to Parkinson v. Commissioner, T.C. Memo. 2010-142, 2010 WL 2595005, at *2, a case in which, in his complaint against his employer, the taxpayer alleged that he had "suffered severe emotional distress, manifested by permanent, irreparable physical harm in the form of * * * [a] second heart attack and its sequelae." The taxpayer and his employer had negotiated a settlement agreement in which, among other things, the employer agree to pay him a sum as "noneconomic damages and not as wages or other income". Id. Because the settlement agreement lacked specificity in describing those damages, we felt free to consider facts that revealed the payor's intent in making the payment. Id. at *4. We found it "self-evident that a heart attack and

its physical aftereffects constitute physical injury or sickness rather than mere subjective sensations or symptoms of emotional distress." Id. at *5. We had no doubt "that those physical injuries figured prominently among the 'noneconomic damages' for which the settlement payment was made." Id. at *6. We found that one-half of the sum received as noneconomic damages was received on account of physical injury or physical sickness and was, as a result, excludable from the taxpayer's gross income under section 104(a)(2). Id. at *7. Parkinson is distinguishable because petitioner has failed to prove that any portion of the disputed $85,000 was paid to him for physical injury or physical sickness.

III.    Conclusion

We sustain respondent's adjustment including the disputed $85,000 in petitioner's 2012 gross income. Petitioner did not receive the disputed $85,000 as damages on account of personal physical injuries or personal sickness as those terms are used in section 104(a)(2).

Decision will be entered for

respondent.