# United States Tax Court

T.C. Memo. 2022-90

THOMAS J. DERN AND PEGGY M. DERN,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 7595-20.                                    Filed August 30, 2022.

————

Thomas J. Dern and Peggy M. Dern, pro sese.

*Laura L. Bates* and *Vladislav M. Rozenzhak*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, *Judge*: With respect to petitioners' 2017 federal income tax, respondent determined a deficiency of $99,215 and a section 6662(a) accuracy-related penalty of $19,843.[1]  After concessions,[2] the issue for decision is whether any part of a legal settlement petitioner husband received from his former employer is excludable from income under section 104(a)(2).

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent concedes that petitioners (1) are not liable for the accuracy-related penalty, (2) are not liable for self-employment tax with respect to the settlement proceeds, and (3) did not have unreported Social Security income.

**Served 08/30/22**

[*2]                              FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  We incorporate the First Stipulation of Facts and accompanying exhibits by this reference.  Petitioners resided in California when the Petition was filed.

From the early 1990s to March 2016, petitioner Thomas J. Dern worked as a sales representative for P.F.I., Inc. (PFI), a manufacturer and distributor of paint and paint-related products.  Mr. Dern sold PFI's products in exchange for a commission, health insurance, and a $500 travel stipend pursuant to a sales representative agreement with the company.

On September 19, 2015, Mr. Dern was hospitalized for acute gastrointestinal bleeding and a resulting heart attack.  Mr. Dern's acute gastrointestinal bleeding was unrelated to his work for PFI.  Although his initial hospital stay lasted for three days, Mr. Dern was intermittently hospitalized over the next few weeks.  Accordingly, he was unable to perform his sales duties for PFI during October and November 2015.  In December 2015 Mr. Dern resumed his sales duties but did so by email and phone in lieu of in-person sales calls.

The following month Steven Holst, an officer of PFI, asked Mr. Dern to resume making in-person sales calls.  However, apart from one date in January 2016, Mr. Dern continued to perform modified sales duties by email and telephone.  On January 27, 2016, PFI notified Mr. Dern that it was terminating their sales representative agreement.  The letter stated: "[Y]our prolonged health conditions have unfortunately had a significant impact on your ability to effectively represent the Company and perform the duties of a sales representative."

Subsequently, Mr. Dern retained an attorney to represent him in a lawsuit against PFI, Mr. Holst, and other affiliated entities (collectively, PFI defendants).  The lawsuit alleged the following causes of action: (1) willful misclassification in violation of California Labor Code § 226.8; (2) disability discrimination in violation of the California Fair Employment and Housing Act (California FEHA), California Government Code § 12940, et seq.; (3) failure to accommodate disability in violation of the California FEHA; (4) failure to engage in the interactive process in violation of the California FEHA; (5) age discrimination in violation of the California FEHA; (6) failure to take all reasonable steps to prevent discrimination in violation of the California

[*3] FEHA; (7) wrongful termination in violation of public policy; (8) intentional infliction of emotional distress; (9) failure to timely pay all wages upon separation from employment; and (10) breach of contract.

In 2017 Mr. Dern and the PFI defendants agreed to settle all claims, which they memorialized in a settlement agreement and mutual release of claims (settlement agreement). Under the settlement agreement, the PFI defendants agreed to pay $550,000 (gross settlement) "to compensate [Mr. Dern] for alleged personal injuries, costs, penalties, and all other damages and claims." Further, the agreement provided that it was "for and on account of [Mr. Dern's] claims alleging compensatory damages, emotional injuries, penalties, and punitive damages." The settlement agreement also included a general release of claims which was "intended to include in its effect, without limitation, all claims known or unknown at the time of the execution" of the settlement agreement.

On September 8, 2017, Mr. Dern's attorney sent him a check for $327,416.31, which was calculated in the following manner:

| | |
|---|---|
| Gross settlement | $550,000.00 |
| Attorney's fees | (220,000.00) |
| Costs (filing fee, court reporter, and videographer) | (3,803.81) |
| Balance from settlement payment | 326,196.19 |
| Reimbursement of previous trust account balance | 1,220.12 |
| **Total** | **$327,416.31** |

Mr. Dern's attorney filed Form 1099–MISC, Miscellaneous Income, with the Internal Revenue Service reporting nonemployee compensation of $330,000 (gross settlement of $550,000 less attorney's fees of $220,000).[3]

On April 15, 2018, respondent received petitioners' 2017 joint Form 1040, U.S. Individual Income Tax Return. Thereon petitioners reported nonemployee compensation of $6,000 pertaining to an

---

[3] To the extent that the amount reported as compensation to Mr. Dern and includible in his gross income should have included attorney's fees, respondent concedes that Mr. Dern would have been entitled to a deduction for such fees pursuant to section 62(a)(20). Respondent likewise concedes that Mr. Dern is entitled to a deduction of $3,803.81 under section 62(a)(20) for court costs paid in an action involving a claim of unlawful discrimination.

[*4] appraisal business.  They did not report as income any part of the gross settlement.

On January 6, 2020, respondent issued a notice of deficiency to petitioners for 2017.  Therein respondent determined, on the basis of the Form 1099–MISC issued by Mr. Dern's attorney, that petitioners had unreported nonemployee compensation of $324,000.[4]  Petitioners timely filed a Petition with this Court alleging that the settlement payment was received for "personal physical injuries and personal physical sickness" and thus not taxable under section 104(a)(2).  A remote trial was held at a Los Angeles, California, Trial Session of the Court.

OPINION

I.     *Preliminary matter*

Petitioners attached several documents to their Simultaneous Opening Brief, Simultaneous Answering Brief, and a Letter filed April 1, 2022.  Some of those documents are duplicates of exhibits we admitted at trial; others are not part of the trial record.  In his Simultaneous Answering Brief, respondent objected to the inclusion of documents that were not received into evidence.

Reopening the record for the submission of additional evidence lies within the discretion of the Court.  *Butler v. Commissioner*, 114 T.C. 276, 286–87 (2000).  The policy of the Court is to try all of the issues raised in a case in one proceeding to avoid piecemeal and protracted litigation.  *Markwardt v. Commissioner*, 64 T.C. 989, 998 (1975).  Petitioners were given ample opportunity to provide evidence both before and at trial, and they have not explained why they did not proffer certain documents until after trial.  Under these circumstances, we decline to receive additional evidence.

II.    *Burden of proof*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of

---

[4] In determining unreported income of $324,000, respondent subtracted $6,000 (the amount petitioners reported as nonemployee compensation) from $330,000 (the amount shown on the Form 1099–MISC).  Because the $6,000 of reported income pertains to an unrelated appraisal business, respondent's calculation appears to have been in error.  Respondent has not asked us to correct this error, which is in petitioners' favor.

**[\*5]** proving those determinations erroneous.[5] *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Merkel v. Commissioner*, 192 F.3d 844, 852 (9th Cir. 1999), *aff'g* 109 T.C. 463 (1997). In cases involving failure to report income, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would ordinarily lie, *see* § 7482(b)(1)(A), has held that the Commissioner must establish "some evidentiary foundation" linking the taxpayer to an alleged income-producing activity before the presumption of correctness attaches to the deficiency determination, *Weimerskirch v. Commissioner*, 596 F.2d 358, 361–62 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977). Once the Commissioner has established such a foundation, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the Commissioner's determinations are arbitrary or erroneous. *See Hardy v. Commissioner*, 181 F.3d 1002, 1004–05 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97.

Because petitioners stipulated that they received the settlement proceeds, respondent has established an evidentiary foundation linking them to the unreported income at issue. Accordingly, respondent's determination of unreported income is presumed correct, and petitioners have the burden of proving that the determination is erroneous. *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. at 115.

III. *Analysis*

Section 61(a) provides that gross income includes all income from whatever source derived unless otherwise excluded by the Code. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 429–30 (1955). While section 61(a) broadly applies to any accession to wealth, statutory exclusions from gross income are to be narrowly construed. *See Commissioner v. Schleier*, 515 U.S. 323, 328 (1995); *United States v. Burke*, 504 U.S. 229, 233 (1992). Petitioners must bring themselves within the clear scope of any statutory exclusion. *See Commissioner v. Schleier*, 515 U.S. at 336–37; *Burke*, 504 U.S. at 233–34.

One exclusion from gross income is found in section 104(a)(2), which provides that gross income does not include "the amount of any damages (other than punitive damages) received (whether by suit or

---

[5] Section 7491(a) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability for tax and meets other prerequisites, the burden of proof rests on the Commissioner as to that factual issue. *See Higbee v. Commissione*r, 116 T.C. 438, 440–41 (2001). Petitioners have neither claimed nor shown that they satisfied the requirements of section 7491(a) to shift the burden of proof to respondent.

[*6] agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness." For these purposes, "emotional distress shall not be treated as a physical injury or physical sickness." § 104(a) (flush text). The legislative history for the section states: "It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H.R. Rep. No. 104-737, at 301 n.56 (1996) (Conf. Rep.), *reprinted in* 1996-3 C.B. 741, 1041.

Treasury Regulation § 1.104-1(c) defines the term "damages" as "an amount received (other than workers' compensation) through prosecution of a legal suit or action, or through a settlement agreement entered into in lieu of prosecution." The taxpayer is required to prove that the damages were received on account of physical injuries or physical sickness. *See Lindsey v. Commissioner*, 422 F.3d 684, 688 (8th Cir. 2005), *aff'g* T.C. Memo. 2004-113. There must be "a direct causal link" between the damages received and the physical injury or sickness sustained. *Id.*

To justify exclusion from income under section 104(a)(2), the taxpayer must show that his or her settlement proceeds were in lieu of damages for physical injuries or physical sickness. *See Green v. Commissioner*, 507 F.3d 857, 867 (5th Cir. 2007), *aff'g* T.C. Memo. 2005-250; *Bagley v. Commissioner*, 105 T.C. 396, 406 (1995), *aff'd*, 121 F.3d 393 (8th Cir. 1997). The nature of the claim that was the actual basis for settlement guides our determination of whether such payments are excludable from income. *See Burke*, 504 U.S. at 237. In evaluating the nature of the underlying claim, a key question to be asked is: "In lieu of *what* were the damages awarded?" *Robinson v. Commissioner*, 102 T.C. 116, 126 (1994) (quoting *Raytheon Prod. Corp. v. Commissioner*, 144 F.2d 110, 113 (1st Cir. 1944), *aff'g* 1 T.C. 952 (1943)), *aff'd in part, rev'd in part*, 70 F.3d 34 (5th Cir. 1995).

Petitioners contend that Mr. Dern's settlement payment was received on account of physical injuries or physical sickness. Respondent contends that it was not, and we agree. The settlement agreement contains no terms indicating that PFI issued the settlement payment on account of Mr. Dern's physical injuries or physical sickness. While the settlement agreement provides for a payment "to compensate [Mr. Dern] for alleged personal injuries," it does not specify whether those injuries were physical. Instead, it provides for a broad general release by Mr. Dern of "all claims known or unknown." This general release does not specifically allocate any part of the settlement

[*7] agreement to personal physical injuries or physical sickness. The nature of Mr. Dern's claim cannot be determined from such a release. *See Green v. Commissioner*, T.C. Memo. 2014-23, at *11.

In the absence of an express statement of what the settlement proceeds were intended to compensate,[6] we consider the intent of the payor on the basis of all facts and circumstances in this case. *See Knuckles v. Commissioner*, 349 F.2d 610, 613 (10th Cir. 1965), *aff'g* T.C. Memo. 1964-33; *Robinson*, 102 T.C. at 127. The settlement agreement provides that the payment was made "to compensate [Mr. Dern] for alleged personal injuries, costs, penalties, and all other damages and claims." However, Mr. Dern's complaint alleged only violations of California's labor and antidiscrimination laws, wrongful termination, breach of contract, and intentional infliction of emotional distress. Mr. Dern did not assert any claims premised upon physical injury or illness. Thus, we cannot conclude that the PFI defendants intended to compensate Mr. Dern for any such injury or illness.

Petitioners argue that the settlement falls within the provisions of section 104(a)(2) because Mr. Dern's physical illness caused PFI to terminate him. However, section 104(a)(2) requires a "direct causal link" between Mr. Dern's illness and the settlement payment. *See Lindsey v. Commissioner*, 422 F.3d at 688. Petitioners failed to prove that such a link exists. Petitioners provided evidence that Mr. Dern was physically ill but did not provide evidence that PFI caused or exacerbated his illness. To the contrary, petitioners stipulated that Mr. Dern's acute gastrointestinal bleeding was unrelated to his work for PFI. Thus, because PFI did not compensate Mr. Dern for physical injury or physical sickness, the settlement payment is not excludable pursuant to section 104(a)(2).

We are sympathetic to petitioners' situation and do not doubt that the circumstances of Mr. Dern's termination caused them emotional and economic harm. However, we are not a court of equity, and we cannot ignore the law to achieve an equitable end. *See Commissioner v. McCoy*, 484 U.S. 3, 7 (1987); *Stovall v. Commissioner*, 101 T.C. 140, 149–50 (1993); *Paxman v. Commissioner*, 50 T.C. 567, 576–77 (1968), *aff'd*, 414 F.2d 265 (10th Cir. 1969).

---

[6] When a settlement agreement includes a clear allocation of settlement proceeds, the allocation is generally binding for tax purposes to the extent that the parties to the agreement negotiated at arm's length in an adversarial context and in good faith. *Robinson*, 102 T.C. at 127.

**[\*8]**   Accordingly, we sustain respondent's determination that the settlement payment petitioners received is not excludable from gross income under section 104(a)(2).  In reaching our holding herein, we have considered all arguments made, and to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing and respondent's concessions,

*Decision will be entered under Rule 155.*