T.C. Memo. 2008-289

UNITED STATES TAX COURT

DANIEL J. AND BRENDA J. STADNYK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11296-05.                    Filed December 22, 2008.

<u>Michael D. Kalinyak</u>, for petitioners.

<u>Alisha M. Harper</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  The issue for decision arises from petitioner
wife's receipt of settlement proceeds of $49,000.  Respondent
determined a deficiency of $13,119 for 2002 and an accuracy-

related penalty of $2,624 under section 6662.[1]  The issues for decision are:  (1) Whether petitioners may exclude the settlement proceeds received by petitioner wife from their gross income pursuant to section 104(a)(2).  We hold the settlement award is gross income and not excludable; and (2) whether petitioners are liable for an accuracy-related penalty under section 6662 for their failure to report the settlement proceeds.  We hold they are not.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time they filed the petition, petitioners resided in Kentucky.

On December 11, 1996, petitioners purchased a used 1990 Geo Storm from Nicholasville Road Auto Sales, Inc. (Nicholasville Auto), for their son for $3,430.  Petitioner wife tendered two checks to Nicholasville Auto in partial payment for the car, check No. 1080 for $100 and check No. 1087 for $1,100, from a checking account with Bank One, Kentucky, N.A. (Bank One). Petitioner husband had visited Nicholasville Auto on multiple occasions to search for a used car for his son.  On one visit to the dealership petitioner husband attempted to test drive the Geo

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code.

Storm, but it was not running. Petitioner husband returned to the dealership, and a salesman informed him that the car had been repaired. Petitioner husband test drove the car around the lot, found that it was working, and decided to purchase the car. Unfortunately, the car broke down within minutes of leaving Nicholasville Auto, approximately 7 miles from the dealership. Petitioners had the car repaired at a cost of $479.78. Petitioners attempted to contact Nicholasville Auto about the Geo Storm. However, their calls were ignored, placed on hold for long periods of time, and not returned.

Because of their dissatisfaction with the car, petitioner wife contacted Bank One to place a stop payment order on the $1,100 check. The stop payment order indicated "dissatisfied purchase" as the reason for the stop payment order. After the stop payment order, Bank One incorrectly stamped the check "NSF" for insufficient funds and returned the check to Nicholasville Auto. On February 4, 1997, Nicholasville Auto filed a criminal complaint against petitioner wife for issuing and passing a worthless check in the amount of $1,100. At approximately 6 p.m. on February 23, 1997, officers of the Fayette County Sheriff's Department arrested petitioner wife at her home in the presence of her husband, her daughter, and a family friend. Petitioner wife was taken to the Fayette County Detention Center. She was handcuffed, photographed, and confined to a holding area. At

approximately 11 p.m., petitioner wife was handcuffed and transferred to the Jessamine County Jail, where she was searched via pat-down and with the use of an electric wand. She was required to undress to her undergarments, remove her brassiere in the presence of police officers, and wear an orange jumpsuit. Petitioner wife was released on bail at approximately 2 a.m. on February 24, 1997. On April 23, 1997, petitioner wife was indicted for "theft by deception over $300.00" as a result of the returned check marked for insufficient funds. These charges were subsequently dropped.

Petitioner wife did not suffer any physical injury as a result of her arrest and detention, except that she was physically restrained against her will and subjected to police arrest procedures. Petitioner wife has stated that she was not grabbed, jerked around, bruised, or physically harmed as a result of her arrest or detention. Petitioner wife visited a psychologist approximately eight times over 2 months as a result of this incident. The costs of these visits were covered by petitioner wife's insurance and employer. She did not have any out-of-pocket medical expenses for physical injury or mental distress suffered as a result of her arrest and detention.

On August 25, 1999, petitioner wife filed a complaint against (1) J.R. Maze, the sole owner of Nicholasville Auto; (2) Nicholasville Auto; and (3) Bank One. On July 5, 2000, she filed

a first amended complaint.  She alleged that Bank One breached a fiduciary duty of care owed to her by improperly and negligently marking check No. 1087 "NSF" for insufficient funds.  The first amended complaint alleges damages against Bank One as follows:

> including, but not limited to, nominal damages, compensatory damages and special damages, including, but not limited to, attorney's fees to defend, lost time and earnings, mortification and humiliation, inconvenience, damage to reputation, emotional distress, mental anguish, and loss of consortium.

As against J.R. Maze and Nicholasville Auto, the first amended complaint seeks the above damages in addition to punitive damages for their actions relating to alleged fraudulent misrepresentations relating to the condition of the Geo Storm and filing the criminal case against petitioner wife.  The first amended complaint bases its claim for damages against J.R. Maze and Nicholasville Auto on the following counts:  Malicious prosecution, abuse of process, false imprisonment, defamation, and outrageous conduct.  The first amended complaint repeats and incorporates by reference these allegations with respect to Bank One.

On March 7, 2002, petitioner wife entered into a mediation agreement with Bank One, under which Bank One agreed to pay petitioner wife the sum of $49,000 in settlement of the complaint against it and to provide a letter of apology to petitioner wife. Petitioner wife agreed to the dismissal of her complaint against Bank One.  On March 14, 2002, Bank One issued a check to

petitioner wife for $49,000.  On May 3, 2002, petitioner wife's complaint against Bank One was dismissed with prejudice pursuant to an agreed order.  Petitioner wife's claims against J.R. Maze and Nicholasville Auto had been dismissed with prejudice pursuant to an agreed order entered on June 8, 2001.  There is no information in the record relating to the terms of the agreed order dismissing the counts against Nicholasville Auto or J.R. Maze.

During the mediation discussions, petitioner wife's attorney informed petitioners that the settlement proceeds would not be taxed.  The mediator and the attorney for Bank One also stated that the settlement proceeds would not be subject to Federal income tax.  Petitioner husband prepared petitioners' 2002 Form 1040, U.S. Individual Income Tax Return, as he had done for over 40 years, using a commercial tax software program.  Petitioner husband understood that settlement proceeds were not taxable and was not aware that a distinction was made for tax purposes for different types of settlements.  Petitioners did not obtain any professional tax advice beyond the statements made by their attorney, the mediator, and the attorney for Bank One regarding whether or not the settlement proceeds were taxable.  Petitioner wife received Form 1099-MISC, Miscellaneous Income, from Bank One

reporting the payment of the $49,000 settlement for the 2002 tax year. Petitioners did not report the settlement proceeds on their 2002 tax return.

Respondent issued a notice of deficiency to petitioners on March 14, 2005, determining that for their 2002 tax year petitioners were liable for a tax deficiency of $13,119 and an accuracy-related penalty under section 6662(a) of $2,624.

OPINION

I.   Settlement Proceeds

The issue for decision requires an analysis of whether the settlement proceeds petitioner wife received qualify for the statutory exclusion from gross income under section 104(a)(2). Except as otherwise specifically provided, gross income includes "all income from whatever source derived". Sec. 61(a). Section 61(a) is broadly construed; conversely, statutory exclusions from income, such as section 104(a)(2), are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 327 (1995).

Section 104(a)(2) excludes from gross income damages received on account of personal physical injury or physical sickness. In order to qualify for income exclusion under section 104(a)(2), taxpayers must satisfy a two-prong test: (1) The underlying cause of action giving rise to the settlement award must be based upon tort or tort type rights, and (2) the damages must be received on account of personal physical injuries or

physical sickness. Sec. 104(a)(2); Commissioner v. Schleier, supra at 336-337; sec. 1.104-1(c), Income Tax Regs. The Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838, amended section 104(a)(2) to require that personal injuries or sickness be physical for the taxpayer to qualify for the section 104(a)(2) income exclusion. For purposes of section 104(a)(2), emotional distress is not treated as a physical injury or physical sickness, except for damages not in excess of the cost of medical care attributable to emotional distress. Sec. 104(a) (flush language). Damages received in settlement of economic rights arising out of a contract are not excludable under section 104(a)(2). Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part and revd. in part on another issue 70 F.3d 34 (5th Cir. 1995); Stocks v. Commissioner, 98 T.C. 1, 9 (1992). The parties dispute whether the settlement proceeds satisfy either prong of this two-part test.

Where damages are received pursuant to a settlement agreement, the tax consequences of the settlement depend on the nature of the claim that was the basis for the settlement, rather than the validity of the claim. United States v. Burke, 504 U.S. 229, 239 (1992); Robinson v. Commissioner, supra at 126. The determination of the nature of the underlying claim is a factual one and is generally made by reference to the settlement agreement considered in the light of the facts and circumstances

surrounding the settlement.  <u>Robinson v. Commissioner</u>, <u>supra</u> at 126; <u>Knoll v. Commissioner</u>, T.C. Memo. 2003-277.  When the settlement agreement allocates the damage award to the underlying claims, that allocation is generally binding for tax purposes to the extent the parties entered into the agreement in an adversarial context, at arm's length, and in good faith. <u>Threlkeld v. Commissioner</u>, 87 T.C. 1294, 1306-1307 (1986), affd. 848 F.2d 81 (6th Cir. 1988).  When the settlement agreement lacks express language that identifies the basis for the settlement award, the Court considers the details surrounding the underlying proceedings, the allegations in the complaint, the arguments made by the parties, and the settlement discussions between the parties.  <u>Robinson v. Commissioner</u>, <u>supra</u> at 127; <u>Threlkeld v. Commissioner</u>, <u>supra</u>.  The most important factor in determining the nature of the claim is the intent of the payor in making the payment.  <u>Stocks v. Commissioner</u>, <u>supra</u> at 10.

A.   <u>The Nature of Petitioner Wife's Claims</u>

The first requirement for the section 104(a)(2) income exclusion is the existence of a claim based upon tort or tort type rights.  The term "tort" has been defined broadly as "A civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages" or "a breach of a duty that the law imposes on persons who stand in a particular relation to one another."  Black's Law Dictionary 1526 (8th ed.

2004).  The limitation of the exclusion to claims arising in tort or tort type rights necessitates a consideration of State law. Threlkeld v. Commissioner, supra at 1305-1306.  State law determines whether the nature of the legal claim is a tort or tort type right, and Federal law controls the Federal tax consequences.  Bland v. Commissioner, T.C. Memo. 2000-98.

The parties disagree as to what legal claims petitioner wife asserted against Bank One and whether the asserted claims were based on tort or tort type rights.  The mediation agreement did not state the basis for the award or allocate the award in any way.  The record does not contain any information concerning the mediation process to assist us in determining the basis of the mediation award.  Rather, the parties focus on petitioner wife's allegations in her complaint.  Respondent contends that the only claim that petitioner wife asserted against Bank One was for breach of a fiduciary duty of care based on its erroneous marking of the $1,100 check for insufficient funds.  Petitioners contend that the settlement proceeds were paid on account of petitioner wife's physical restraint and detention, which constituted the tort of false imprisonment.

As respondent points out, petitioner wife asserted only one count against Bank One alone.  However, petitioner wife asserted numerous counts against codefendants J.R. Maze and Nicholasville Auto, including false imprisonment, malicious prosecution, abuse

of process, and defamation.  The first amended complaint specifically repeats and incorporates by reference each of these counts against Bank One.  This incorporation by reference is sufficient for us to find that petitioner wife alleged a claim of false imprisonment against Bank One.

Although petitioners rely heavily on the false imprisonment claim to support the applicability of section 104(a)(2), petitioner wife also alleged the torts of negligence and breach of fiduciary duty against Bank One.  Respondent characterizes those claims as based on contract under State law, citing Bank of Louisville Royal v. Sims, 435 S.W.2d 57, 58 (Ky. Ct. App. 1968).  However, it is not as clear as respondent would have us believe that a lawsuit arising from a bank and customer relationship is based on contract alone.  The Kentucky banking statute recognizes elements of both contract and tort in the bank-depositor relationship.  See Bullitt County Bank v. Publishers Printing Co., 684 S.W.2d 289, 291-292 (Ky. Ct. App. 1984).  The banking statute imposes a duty on banks to exercise good faith and ordinary care in handling customer accounts, a duty which inherently incorporates common law rules of negligence.  Pulliam v. Pulliam, 738 S.W.2d 846, 849 (Ky. Ct. App. 1987).  The remedy for a breach of a duty imposed by law is not necessarily confined to a contract claim.  Am. Natl. Bank v. Morey, 69 S.W. 759, 760 (Ky. Ct. App. 1902).  Specifically, Morey recognizes that a bank

customer may have a tort claim for a wrongful dishonor of a check.  Id.  Negligence in the performance of a contract can give rise to a tort where the negligence breached a duty owed by the defendant independent of the contract.  Mims v. W.-S. Agency, Inc., 226 S.W.3d 833, 836 (Ky. Ct. App. 2007).  Petitioner wife had a right under the State banking statute to stop payment on the check.  See Ky. Rev. Stat. Ann. sec. 355.4-403(1) (LexisNexis 2008).  Thus, Bank One owed petitioner wife certain duties imposed under the State banking statute.  Negligence in the performance of those duties could give rise to a tort claim sufficient to satisfy the first prong of the section 104(a)(2) income exclusion.

Respondent contends that Bank One's liability to petitioner wife is based on Ky. Rev. Stat. Ann. sec. 355.4-402 (LexisNexis 2008).  That section provides a cause of action by a customer against a bank that wrongfully dishonors the customer's check.  The statute does not specify a theory for a bank's liability for wrongful dishonor.  See also U.C.C. sec. 4-402, Official Comment 2 (2008) (recognizing dishonor may be based on contract, tort, or both). Courts have recognized that a depositor's claim for wrongful dishonor of a check may give rise to a cause of action in contract or tort, or both.  Schwartz, Annotation, "Liability of Bank to Depositor for Dishonoring a Check", 126 A.L.R. 206 (1940).  Thus, this statute does not provide conclusive support

for respondent's characterization of petitioner wife's complaint against Bank One as a contract claim. Moreover, neither the complaint nor the first amended complaint cites this statute as the basis for petitioner wife's cause of action against Bank One. Wrongful dishonor occurs when a bank refuses to pay a check drawn upon it by a customer with sufficient funds to cover the check. By placing a stop payment order, petitioner wife asked Bank One not to honor the $1,100 check. The similarity between Bank One's failure to adhere to the stop payment order and a wrongful dishonor is that Bank One's mistake exposed petitioner wife to arrest and prosecution. Ky. Rev. Stat. Ann. sec. 355.4-402 specifically recognizes that a wrongful dishonor may proximately cause the customer's arrest, which is a reasonably foreseeable consequence of the wrongful dishonor. Thus, it recognizes that while Bank One may not have initiated the criminal action against petitioner wife, its handling of the $1,100 check may have proximately caused her arrest.

It is incorrect to characterize petitioner wife's complaint against Bank One as a contract claim or merely a dispute over the wrongful dishonor of a check. Rather, petitioner wife decided to sue Bank One because of the ordeal she suffered as a result of her arrest and detention. Petitioner wife did not suffer an economic loss from Bank One's alleged mishandling of her check. She did not sue Bank One to recover on economic rights arising

from a contract with Bank One.  Petitioner wife sought damages against Bank One that resulted from her arrest, detention, and indictment.  She alleged damages associated with tort type rights:  Emotional distress, mental anguish, mortification, humiliation, and damage to reputation.  Although Bank One did not initiate the criminal proceedings against petitioner wife, the erroneous marking of the check for insufficient funds precipitated the arrest.  Bank One entered into the settlement agreement with an intent to resolve claims for tort type rights.  Accordingly, we find that petitioner wife received the settlement for claims based on tort or tort type rights.

B.    Physical Injury or Physical Sickness

The second requirement for income exclusion under section 104(a)(2) is that the settlement proceeds be paid on account of physical injury or physical sickness.  Congress amended section 104(a)(2) in 1996 to distinguish between physical injuries and nonphysical injuries and specifically limited the availability of the section 104(a)(2) income exclusion to physical injuries for payments made after August 20, 1996.  The amendment overruled court decisions that exempted payments for nonphysical injuries from gross income.  H. Conf. Rept. 104-737, at 301 (1996), 1996-3 C.B. 741, 1041.  Before the 1996 amendment, the Court of Appeals for the Sixth Circuit, to which this case is appealable, held that damages received on account of a personal nonphysical injury

were excludable under section 104(a)(2).  See Threlkeld v. Commissioner, 848 F.2d 81 (6th Cir. 1988).  The terms "physical injuries" and "physical sickness" do not include emotional distress, except for damages not in excess of the cost of medical care attributable to emotional distress.  Sec. 104(a) (flush language).

Petitioner wife has admitted that she did not suffer physical harm during the course of her arrest and detention.  She was not grabbed, jerked around, or bruised.  Rather, petitioners argue that physical restraint and detention constitute a physical injury for purposes of section 104(a)(2).  Petitioners contend that a person does not have to be cut or bruised for physical injury to occur under tort law.

Physical restraint and physical detention are not "physical injuries" for purposes of section 104(a)(2).  Being subjected to police arrest procedures may cause physical discomfort.  However, being handcuffed or searched is not a physical injury for purposes of section 104(a)(2).  Nor is the deprivation of personal freedom a physical injury for purposes of section 104(a)(2).  Physical injury is not required for the tort of false imprisonment to occur.  Kentucky courts define false imprisonment as "any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats or

otherwise." Grayson Variety Store, Inc. v. Shaffer, 402 S.W.2d 424, 425 (Ky. Ct. App. 1966). The tort of false imprisonment protects personal interest in freedom from physical restraint; such an interest is "in a sense a mental one". Banks v. Fritsch, 39 S.W.3d 474, 479-480 (Ky. Ct. App. 2001). Injury from false imprisonment is "in large part a mental one" where the plaintiff can recover for mental suffering and humiliation. Id. at 479. The alleged false imprisonment against petitioner wife did not cause her to suffer physical injury as required for relief under section 104(a)(2).

It seems likely, as petitioners contend, that Bank One agreed to pay the $49,000 settlement to compensate for the ordeal that petitioner wife suffered as a result of her arrest, detention, and indictment. The damages sought by petitioner wife against Bank One are stated in terms of recovery for nonphysical personal injuries: Emotional distress, mortification, humiliation, mental anguish, and damage to reputation. These types of injuries are not excludable under section 104(a)(2). See Sanford v. Commissioner, T.C. Memo. 2008-158 (settlement award for emotional distress relating to sexual harassment and discrimination claims is not excludable); Polone v. Commissioner, T.C. Memo. 2003-339 (settlement award for defamation claim is not excludable), affd. 505 F.3d 966 (9th Cir. 2007); Venable v. Commissioner, T.C. Memo. 2003-240 (settlement payment for mental

anguish and loss of reputation relating to malicious prosecution claim is not excludable), affd. 110 Fed. Appx. 421 (5th Cir. 2004). Petitioner wife did not experience a "physical injury" as required for relief under section 104(a)(2). For this reason, the settlement proceeds were not excludable from income under section 104(a)(2).

C.   Sixteenth Amendment and Section 61(a) Arguments

In the alternative, petitioners argue that settlement proceeds for personal injuries are not gross income within the meaning of section 61(a) where (A) the settlement was not paid for lost earnings and (B) petitioners were not enriched by the settlement. Petitioners further argue that section 104(a)(2) conflicts with section 61(a) and violates the Sixteenth Amendment to the extent that it taxes compensatory damages received for personal injuries.

Petitioners' arguments are similar to those previously rejected. See Murphy v. IRS, 493 F.3d 170, 179-180 (D.C. Cir. 2007); Ballmer v. Commissioner, T.C. Memo. 2007-295. Gross income includes "all economic gains not otherwise exempted." Commissioner v. Banks, 543 U.S. 426, 433 (2005). Thus, petitioner wife's settlement award for personal injury is gross income under section 61(a). Section 104(a)(2) does not conflict with section 61(a) by subjecting damage awards for nonphysical personal injury to tax. As this Court has explained in Ballmer,

for the flush language of section 104(a) to make sense (defining emotional distress as a nonphysical injury), the definition of gross income in section 61(a) must first include damages for nonphysical injuries. Section 104(a)(2) does not conflict with section 61(a).

Moreover, petitioners' argument with respect to the unconstitutionality of section 104(a)(2) is without merit. See Murphy v. IRS, supra at 186; Ballmer v. Commissioner, supra. In Murphy, the Court of Appeals examined at length the constitutionality of taxing damage awards for nonphysical personal injuries. The court held that the taxation of awards received for personal, nonphysical injury was within the power of Congress and that such a tax was not subject to the apportionment requirement and was uniform. We see no reason to revisit this issue here. See Hawkins v. Commissioner, T.C. Memo. 2007-286.

II. Section 6662 Penalty

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662 for substantial understatement of income tax for the 2002 tax year. Section 6662(a) and (b)(2) imposes a 20-percent penalty on an underpayment of tax that results from a substantial understatement of income tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return, or $5,000. Sec. 6662(d)(1)(A).

The section 6662 penalty is inapplicable to the extent the taxpayer had reasonable cause for the understatement and acted in good faith.  Sec. 6664(c)(1).  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the relevant facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in the light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Id.  Generally, the most important factor is the extent of the taxpayer's efforts to assess the proper tax liability.  Id.  An honest misunderstanding of fact or law that is reasonable in the light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  Remy v. Commissioner, T.C. Memo. 1997-72.  Petitioners relied on statements made by their attorney, Bank One's attorney, and the mediator during the course of the mediation conference that the settlement award would not be subject to Federal income tax.  The mediation agreement did not contain any statements with respect to the tax treatment of the settlement.  Petitioners did not seek additional advice regarding the proper tax treatment of the settlement after receiving the Form 1099-MISC from Bank One reporting the $49,000 settlement

award.  Petitioners received unsolicited advice from three separate and independent individuals that the settlement would not be taxed.  At least two of those individuals were disinterested parties with no relationship with petitioners.  This advice confirmed petitioners' previous understanding of the taxation of settlement awards.  Although none of those individuals had specialized knowledge in tax law, they were experienced in personal injury lawsuits and settlements.  Petitioners acted reasonably and in good faith when following their advice and preparing their own return as they have done for over 40 years.  We find that reasonable persons could disagree as to whether additional advice was required in this instance.  The receipt of Form 1099 should not preclude a finding of reasonable cause.  See Kidd v. Commissioner, T.C. Memo. 2004-135; sec. 1.6662-3(b)(1)(i), Income Tax Regs.  Accordingly, we find that petitioners are not liable for the section 6662 penalty.

On the basis of the foregoing,

Decision will be entered for respondent as to the deficiency and for petitioners as to the penalty.