T.C. Memo. 2013-290

UNITED STATES TAX COURT

LINDA SHARP, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21332-12.                    Filed December 23, 2013.

<u>Christopher F. O'Donohoe</u> and <u>Judith M. O'Donohoe</u>, for petitioner.

<u>Stephen A. Haller</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>: Respondent determined a $25,729 deficiency in

petitioner's 2010 Federal income tax and a $5,146 accuracy-related penalty under

[*2] section 6662(a).[1]  After concessions, there are two issues for decision.[2]  First,

we must decide whether petitioner is required to include $70,000 in settlement

proceeds in her gross income for 2010.  We hold that she is.  And second, we must

decide whether petitioner is liable for the accuracy-related penalty.  We hold that

she is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the accompanying exhibits are incorporated by this reference.  Petitioner

resided in Virginia at the time she filed the petition.

A.  University of Northern Iowa

A number of events and people conspired to make petitioner's work life

unmanageable.  Petitioner's work life centered around her employment with the

University of Northern Iowa (university) as a professor for the several years

---

[1]All section references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules of Practice and
Procedure, unless otherwise indicated.  All dollar amounts are rounded to the
nearest dollar.

[2]Respondent concedes two points on brief.  First, respondent concedes that
the $70,000 in settlement proceeds is not subject to self-employment tax.  Second,
respondent concedes that petitioner is entitled to deduct $31,752 in litigation costs
as a miscellaneous itemized deduction subject to the 2% of adjusted gross income
threshold under sec. 67 for her 2010 tax year.  Accordingly, a Rule 155
computation is necessary and will be ordered.

**[*3]** leading up to and including 2010.  The trouble began in 2003 when petitioner was demoted to a secretarial position in the dean's office after she reported missing equipment.  Petitioner took a leave of absence from the dean's office to teach in a local public school and successfully sought to be reinstated as a university professor.  Petitioner again reported missing equipment after she resumed her duties as a professor.  This time petitioner's reporting led to a yearlong grievance dispute between her and another faculty member.

The stress created in petitioner's work life ultimately led her to leave the university.  Petitioner sensed that her colleagues and supervisors were hostile to her and that they had impeded her advancement.  Petitioner developed muscle tension and migraine headaches, became afraid to go to the university, developed a fear of people, had nightmares and was eventually hospitalized for depression.  In 2007 petitioner's psychiatrist advised her to not return to work at the university.  Petitioner was diagnosed with severe clinical depression, anxiety disorder and posttraumatic stress disorder.

B.  Legal Actions

Petitioner brought at least two legal actions relating to her employment with the university.  One claim was a workers' compensation claim.  A second claim sought damages for her colleagues' gross negligence, which involved several

[*4] people conspiring to force petitioner to quit her job. Petitioner entered into a settlement agreement with the university under which the university agreed to pay her settlement proceeds of $210,000 in three $70,000 installments. The settlement agreement stated that the settlement proceeds were being paid for "emotional distress damages only".

C. 2010 Return

Petitioner received $70,000 of the settlement proceeds in 2010. Petitioner did not report this payment on her Federal income tax return for 2010. Rather, she attached a statement[3] to her return on the advice of her attorney[4] explaining that she was excluding the settlement proceeds from her gross income under section 104(a)(2). Respondent issued the deficiency notice to petitioner, determining that she should have included the $70,000 in settlement proceeds in her gross income for 2010. Respondent further determined that petitioner was liable for the accuracy-related penalty for 2010. Petitioner timely filed a petition.

---

[3]The statement was not provided on Form 8275, Disclosure Statement, which is the form the Secretary prescribes.

[4]Petitioner could not offer the testimony of the attorney who had represented her in her workers' compensation case and who had advised her that she could exclude the settlement proceeds from gross income because the same attorney represented her at trial before this Court.

**[\*5]**                                    OPINION

We are asked to address the often-litigated issue of whether a taxpayer may exclude from gross income a settlement amount received from a former employer. We first address whether petitioner may exclude the settlement proceeds from her gross income. We then address whether petitioner is liable for the accuracy-related penalty.

A.  Settlement Proceeds

We begin with the burden of proof. The Commissioner's determinations in a deficiency notice are generally presumed to be correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This burden may shift to the Commissioner under certain circumstances. Sec. 7491; see Higbee v. Commissioner, 116 T.C. 438, 441 (2001). Petitioner concedes that no such circumstances exist here and that she bears the burden of proving that respondent's determinations in the deficiency notice are erroneous.

We now consider whether petitioner can exclude the $70,000 in settlement proceeds from her gross income for 2010. Petitioner argues that she can exclude the settlement proceeds for two reasons. Petitioner first contends that she received the settlement proceeds under a statute in the nature of a workers' compensation

**[\*6]** act.  See sec. 104(a)(1); sec. 1.104-1(b), Income Tax Regs.  Petitioner next argues that she received the settlement proceeds on account of her emotional distress attributable to a physical injury or physical sickness.  See sec. 104(a)(2); sec. 1.104-1(c), Income Tax Regs.  We discuss each theory in turn.

1.  Workers' Compensation Act

We now consider whether petitioner received the settlement proceeds under a statute in the nature of a workers' compensation act.

A taxpayer's gross income generally includes all income from whatever source derived.  Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  The definition of gross income is broad in scope, while exclusions from income are narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 328 (1995).  Amounts that a taxpayer receives as compensation for personal injuries under a statute in the nature of a workmen's compensation act may be excluded from gross income.  See sec. 104(a)(1); sec. 1.104-1(b), Income Tax Regs.

Petitioner contends that Iowa's Workers' Compensation Act (IWCA) is a statute in the nature of a workmen's compensation act.  See sec. 1.104-1(b), Income Tax Regs.  Petitioner argues that she may exclude the settlement proceeds from her gross income because she received the proceeds in exchange for settling a claim under the IWCA.  See Iowa Code Ann. sec. 85.20(2) (West 2009).

**[\*7]** Respondent counters that petitioner has failed to prove that she received the settlement proceeds in exchange for her settling a claim under the IWCA. <u>See</u> Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. at 115. We agree with respondent and therefore find that petitioner did not receive the $70,000 in settlement proceeds under a statute in the nature of a workmen's compensation act.[5]

What petitioner and the university intended to compromise by entering into the settlement agreement is a question of fact that must be determined by reference to the agreement's express language. <u>See</u> <u>Simpson v. Commissioner</u>, 141 T.C. __, __ (slip op. at 15) (Oct. 28, 2013). If we are unable to find evidence of the parties' express intent in the settlement agreement, we must look to whether the payor in fact intended to settle a claim brought under a statute in the nature of a workmen's compensation act. <u>See</u> <u>id.</u> Under Iowa law,[6] extrinsic evidence may be used to aid in our interpretation, although the words of an agreement are the most important

---

[5]We therefore need not reach the question of whether the Iowa's Workers' Compensation Act (IWCA) itself is a statute in the nature of a workmen's compensation act because we find petitioner has failed to prove that she received the settlement proceeds under the IWCA.

[6]The parties do not discuss what law would apply to interpret the terms of the settlement agreement. We therefore assume that Iowa law applies to the settlement agreement because the university is in Iowa, petitioner was a resident of Iowa when she executed the settlement agreement and the parties executed the agreement in Iowa.

[*8] evidence of a party's intent.  Pillsbury Co. v. Wells Dairy, Inc., 752 N.W.2d 430, 436 (Iowa 2008).

The settlement agreement does not indicate that the parties intended petitioner to receive the settlement proceeds in exchange for her settling a claim under the IWCA.  The sole arguable reference to a workers' compensation claim is lodged in the seventh and final term of the agreement and conditions the agreement on petitioner's settling her "W.C. claim."  This sole vague reference is insufficient to prove that the university paid petitioner the settlement proceeds in exchange for her settling a claim under the IWCA.

Further, petitioner has not otherwise proven that the university intended to pay her the settlement proceeds in exchange for her settling a claim under the IWCA.  Petitioner testified that she brought two IWCA claims.  She also had the 1-page settlement agreement entered into the record.  Petitioner urges this Court to surmise from this scant evidence that the university intended to pay the settlement proceeds to her in exchange for her settling an IWCA claim.

We cannot bridge the logical gap between the evidence petitioner offered of her IWCA claims and a finding that the university paid the settlement proceeds in exchange for petitioner's settling an IWCA claim.  See Take v. Commissioner, T.C. Memo. 1985-388 (holding that the taxpayers failed to satisfy their burden

**[*9]** under section 104(a)(1)). Specifically, the record does not reflect that the IWCA claims were the only claims the university could have considered when entering into the settlement agreement.[7] For example, if petitioner had brought additional claims against the university that the university considered in entering into the settlement agreement, the settlement proceeds might have been attributable to non-IWCA claims. Without this missing link we are unable to conclude how much, if any, of the settlement proceeds may have been paid in exchange for petitioner's settling an IWCA claim. See id.

2. Physical Injury or Physical Sickness

We now consider whether petitioner received the settlement proceeds on account of personal physical injuries or physical sickness.

Damages that a taxpayer receives on account of personal physical injuries or physical sickness may generally be excluded from gross income. Sec. 104(a)(2); sec. 1.104-1(c), Income Tax Regs. The Supreme Court has held that a taxpayer intending to exclude damages from gross income under this provision must first satisfy two independent requirements. Commissioner v. Schleier, 515 U.S. at 336-

---

[7]Moreover, petitioner failed to offer any documents relating to her claims under the IWCA. This failure is particularly curious, given petitioner is currently being represented by her workers' compensation attorney, who seemingly would have unfettered access to these documents. We remind petitioner that the burden of proof is on her.

**[*10]** 337.[8]  A taxpayer must show that the underlying cause of action giving rise

to the recovery is based on tort or tort-type rights.  Id. at 337.  A taxpayer must

also demonstrate he or she received the damages on account of his or her personal

physical injuries or physical sickness.  Id.;[9] see also Blackwood v. Commissioner,

T.C. Memo. 2012-190 (applying the two-prong test under the amended version of

section 104(a)(2)).

Petitioner again relies solely on her own testimony regarding her IWCA

claims and a copy of the 1-page settlement agreement to prove she received the

settlement proceeds on account of her physical injuries or physical sickness.  And

again, we find that petitioner has failed to prove her case.

---

[8]As we recently explained, the requirement that recovery be based on tort or
tort-type rights was rooted in the language of the former regulations under sec.
1.104-1(c), Income Tax Regs.  Simpson v. Commissioner, 141 T.C. __, __ (slip
op. at 23) (Oct. 28, 2013).  The current regulations have abandoned this tort or
tort-type right requirement.  Sec. 1.104-1(c)(2) and (3), Income Tax Regs.
Petitioner argues her case under the former regulations and has not elected to have
the current regulations apply retroactively.  This regulatory change would not
affect our conclusion, however, because petitioner failed to prove that she received
the settlement proceeds on account of physical injury or physical sickness.

[9]The Supreme Court analyzed sec. 104(a)(2) before its amendment by the
Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1605(a),
110 Stat. at 1838, when the restrictive modifier "physical" was added to limit the
scope of "personal injuries."  Commissioner v. Schleier, 515 U.S. 323, 328 n.3
(1995).

**[*11]** Petitioner has failed to prove that the university paid her the settlement proceeds on account of her physical injuries or physical sickness. The settlement agreement expressly states that the university would pay the settlement proceeds to petitioner for emotional distress damages only.[10] On the basis of the weight we apply to this express language, we find that the parties intended the settlement proceeds to exclude damages for physical injuries. See Simpson v. Commissioner, 141 T.C. at __ (slip op. at 15).

Further, even if we were to interpret "emotional distress damages only" as petitioner urges us to do, she failed to provide sufficient evidence to make her case that her physical manifestations amount to physical injuries. See, e.g., Blackwood v. Commissioner, T.C. Memo. 2012-190 (taxpayer suffered a recurrence of depression, which included physical symptoms such as insomnia, sleeping too much, migraines, nausea, vomiting, weight gain, acne and pain in her back, shoulder and neck); Stadnyk v. Commissioner, T.C. Memo. 2008-289 (taxpayer's injuries included emotional distress, mortification, humiliation, mental anguish

---

[10]Damages not in excess of the amount a taxpayer pays for medical care for emotional distress are generally excludable from gross income. Sec. 104(a)(2) (flush language); sec. 1.104-1(c), Income Tax Regs. Petitioner failed to make this argument at trial or on brief and offered no evidence as to the amount she paid for medical care costs for her emotional distress. Accordingly, we find that none of the settlement award is excludable under this theory.

[*12] and damage to reputation), aff'd, 367 Fed. Appx. 586 (6th Cir. 2010);

Sanford v. Commissioner, T.C. Memo. 2008-158 (emotional distress symptoms

included asthma, sleep deprivation, skin irritation, appetite loss, severe headaches

and depression); Lindsey v. Commissioner, T.C. Memo. 2004-113 (symptoms

included fatigue, indigestion and insomnia), aff'd, 422 F.3d 684 (8th Cir. 2005).

B.  Accuracy-Related Penalty

We now consider the accuracy-related penalty.  This penalty applies to any

portion of an underpayment of tax that a taxpayer is required to show on a return if

the underpayment is attributable to a substantial understatement of income tax.

Sec. 6662(a), (b)(2).  An individual's understatement of income tax is substantial

if it exceeds the greater of $5,000 or 10% of the tax required to be shown on a

return.  Sec. 6662(d)(1)(A).  The Commissioner must first produce sufficient

evidence indicating it is appropriate to impose the penalty.  Sec. 7491(c); Higbee

v. Commissioner, 116 T.C. at 446.  The taxpayer must then come forward with

persuasive evidence that the Commissioner's determination is incorrect.  Rule

142(a); Woodsum v. Commissioner, 136 T.C. 585, 591 (2011).

Respondent has met his burden of production with respect to the accuracy-

related penalty.  See sec. 7491(c).  Petitioner reported income tax of $2,750 in

2010.  Petitioner understated her income tax liability for 2010 by $8,625 because

**[\*13]** she did not include the $70,000 in settlement proceeds in her taxable income in 2010.[11]  This amount is larger than $5,000, which in turn is larger than 10% of the tax that should have been shown on the return.  Accordingly, respondent has met his burden of production.[12]

Petitioner, in contrast, has failed to meet her burden of providing persuasive evidence that respondent's determination is incorrect.  See Rule 142(a); Woodsum v. Commissioner, 136 T.C. at 591.  Petitioner advances three theories to argue that the accuracy-related penalty should not apply.  First, petitioner claims that she had substantial legal authority for excluding the settlement proceeds from her gross income.  Next, petitioner argues that she had a reasonable basis for excluding the settlement proceeds from her gross income and adequately disclosed her position to respondent.  And last, petitioner contends that she had reasonable cause for

---

[11]Petitioner's adjusted gross income for 2010 would have been $113,372 if she had included the settlement proceeds.  Her itemized deductions would have therefore been $48,951 after accounting for the deductible litigation costs she incurred.  Accordingly, petitioner's taxable income for 2010 would have been $60,771 rather than $21,123.  And the tax petitioner was required to show on her return is $11,375 rather than $2,750.

[12]Respondent alternatively determined that petitioner was liable for an accuracy-related penalty for negligence or disregard of rules and regulations under sec. 6662(b)(1).  We need not and do not consider whether petitioner was negligent or disregarded rules or regulations because respondent has met his burden of proving that petitioner substantially understated her income tax.

**[\*14]** excluding the settlement proceeds from her gross income.  We address each theory in turn.

1.  Substantial Authority

Petitioner argues that she had substantial authority for not including the settlement proceeds in her gross income under section 104(a)(1) and (2).  See sec. 6662(d)(2)(B)(I).  Respondent counters that petitioner failed to offer sufficient evidence to establish a prima facie case under section 104(a)(1) and (2).  We agree with respondent.

An understatement of income tax, for purposes of the accuracy-related penalty, is reduced to the extent it is attributable to a tax position for which a taxpayer has substantial authority.  Sec. 6662(d)(2)(B)(I); sec. 1.6662-4(d), Income Tax Regs.  The substantial authority standard involves an analysis of the law and application of the law to the relevant facts.  Sec. 1.6662-4(d)(2), Income Tax Regs.  The substantial authority standard is more stringent than the reasonable basis standard, but less stringent than the "more likely than not" standard.  Id.

Petitioner lacked substantial authority for excluding the settlement proceeds from her gross income.  Petitioner must analyze and apply the relevant authorities to her circumstances in order to satisfy the substantial authority standard.  Id.  We previously found that petitioner failed to establish that the $70,000 in settlement

**[\*15]** proceeds arose from her settling a claim under the IWCA or from her physical injuries or physical sickness.  Accordingly, petitioner has not shown the relevant authorities support her position because she has not established they apply to her particular facts.  See id.

### 2.  Reasonable Basis and Adequate Disclosure

Petitioner next argues that she had a reasonable basis for not including the $70,000 in settlement proceeds in her gross income under section 104(a)(1) and (2) and adequately disclosed her position on her Federal income tax return.  See sec. 6662(d)(2)(B)(ii); sec. 1.6662-3(c), Income Tax Regs.  The reasonable basis standard is lower than the substantial authority standard but is not satisfied by a return position that is merely arguable or that is merely a colorable claim.  Sec. 1.6662-3(b)(3), Income Tax Regs.

Petitioner's reasonable basis argument fails for the same reason that her substantial authority argument fails.  Petitioner did not establish that the $70,000 in settlement proceeds arose from her settling a claim under the IWCA or from her physical injuries or physical sickness.  Therefore, petitioner has not shown the

[*16] relevant authorities support her position because she has not established they apply to her particular facts.  See id.[13]

### 3.  Reasonable Cause and Good-Faith Reliance

Petitioner next argues that she is not liable for the accuracy-related penalty because she relied upon the advice of her attorney concerning the tax treatment of the settlement proceeds.  See sec. 6664(c)(1); sec. 1.6664-4(a), Income Tax Regs.  Reliance on the advice of an attorney may constitute reasonable cause and good faith where a taxpayer proves by a preponderance of evidence that the taxpayer reasonably believed that the attorney is a competent tax adviser with sufficient expertise to justify reliance, the taxpayer provided necessary and accurate information to the attorney and the taxpayer actually relied in good faith on the attorney's judgment.  See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner has not established that she had reasonable cause for excluding the settlement proceeds from her gross income.  First, the only evidence petitioner offered as to the tax advice she relied upon was her own self-serving testimony and the statement that she attached to her income tax return describing why she

_____

[13]We therefore need not address whether the statement petitioner attached to her return would satisfy the adequate disclosure requirements under sec. 1.6662-3(c), Income Tax Regs.

[*17] was excluding the settlement proceeds from her income. And second, the statement that petitioner attached to her Federal income tax return mentions only section 104(a)(2), the provision dealing with physical injuries or physical sickness.

Our caselaw is rife with decisions holding that emotional distress, even when coupled with physical manifestations, is an insufficient basis on which a taxpayer may exclude settlement proceeds from gross income. See, e.g., Blackwood v. Commissioner, T.C. Memo. 2012-190 (taxpayer suffered a recurrence of depression, which included physical symptoms such as insomnia, sleeping too much, migraines, nausea, vomiting, weight gain, acne and pain in her back, shoulder and neck); Stadnyk v. Commissioner, T.C. Memo. 2008-289 (taxpayer's injuries included emotional distress, mortification, humiliation, mental anguish and damage to reputation); Sanford v. Commissioner, T.C. Memo. 2008-158 (emotional distress symptoms included asthma, sleep deprivation, skin irritation, appetite loss, severe headaches and depression); Lindsey v. Commissioner, T.C. Memo. 2004-113 (symptoms included fatigue, indigestion and insomnia). It is difficult to imagine how petitioner, a professional, accomplished woman, could reasonably rely on an attorney whose tax advice was so contrary to such an established body of law. In any case, the record fails to

**[*18]** reflect that petitioner reasonably believed her attorney to be a competent tax adviser with sufficient expertise to justify reliance.

Accordingly, we sustain respondent's determination regarding the accuracy-related penalty.

We have considered all arguments the parties made in reaching our holdings, and, to the extent not mentioned, we find them to be irrelevant or without merit.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.